## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **CORNELL F. DAYE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:08-0215** |
| | ) | |
| **DAVID BALLARD, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### AMENDED PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Respondent's Motion for Summary Judgment (Document No. 71), filed on July 7, 2014, by Julie A. Warren, Assistant Attorney General. Petitioner filed his Response on August 19, 2014. (Document No. 77.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant Respondent's Motion for Summary Judgment.

### PROCEDURAL HISTORY

1.    **Case Nos. 00-F-36 and 01-IF-158:**

On January 10 2000, the Grand Jury of Raleigh County, West Virginia, returned an Indictment against Petitioner, charging him with one count of possession of "crack" cocaine with intent to deliver, second offense (Case No. 00-F-36). State ex rel. Daye v. McBride, 222 W.Va. 17, 658 S.E.2d 547 (2007); (Document No. 71-2, pp. 6 - 7.) Following a two-day jury trial, Petitioner was convicted of the above count on August 21, 2001. (Id., p. 7.) On August 22, 2001, the State filed an Information pursuant to W.Va. Code § 61-11-19 stating that Petitioner had been convicted of three prior drug convictions: (1) An August 21, 2001 felony conviction for possession of crack cocaine with intent to deliver; (2) A March 22, 1999 felony conviction for

possession of a controlled substance with intent to deliver; and (3) An April 28, 1998 felony conviction for possession of crack cocaine with intent to deliver (Case No. 01-IF-158.). (Document No. 71-2, p. 7 and Document No. 71-5.) On September 6, 2001, a hearing on the Information was conducted where Petitioner was advised that if he admitted he was the person convicted of the crimes identified in the Information he "could be sentenced to a period of life in the penitentiary, with the possibility of parole." (Document No. 71-2, p. 7 and Document No. 71-7, p. 10.) Petitioner admitted he was the person convicted in the previous cases and the Circuit Court accepted his admission and entered a finding that Petitioner "knowingly, voluntarily, and understandingly appreciates the ramifications of an admission." (Document No. 71-2, p. 7 and Document No. 71-7, pp. 12 - 13.) On September 26, 2001, the Circuit Court sentenced Petitioner to an indeterminate term of not less than two nor more than thirty years in prison pursuant to the enhancement provisions of W. Va. Code § 60A-4-408. (Document No. 71-2, pp. 7 and 14 and Document No. 71-8.) The Circuit Court declined to enhance Petitioner's sentence for a habitual offender pursuant to W. Va. Code § 61-11-18. (Id.) On October 2, 2001, the State filed a Motion for Correction Sentence pursuant to Rule 35(a) contending that W. Va. Code § 61-11-18 required a life sentence. (Document No. 71-2, p. 7.) On October 11, 2001, the Circuit Court re-sentenced Petitioner to life in prison. (Document No. 71-2, p. 7 and Document No. 71-9.)

Petitioner appealed his sentence to the West Virginia Supreme Court of Appeals. (Document No. 71-2, p. 7.) In his appeal, Petitioner raised the following assignments of error:

1.    Petitioner's recidivist life sentence for non-violent drug convictions was a denial of his constitutional right not to be subjected to cruel and unusual punishment or to penalties disproportionate to the character and degree of his offense.

2

2.      Petitioner's recidivist life sentence denies him equal protection of the law since West Virginia, through its courts, has vacated the recidivist life sentences of similarly situated Defendants.

3.      The trial court erred and violated the Petitioner's right to due process in denying his motion to dismiss the indictment for failure to try the case within the time required under W. Va. Code 62-14-1.

4.      Petitioner's rights under the Fourth Amendment and under W. Va. Const. Art. 3, 6 were violated by officers who created a crime and solicited its execution as an illegitimate pretext to stop the vehicle in which the Petitioner was a passenger and to search the Petitioner.

5.      The chain of custody of the purported crack cocaine was unreliable and the testing performed by the State police lab was questionable; the Petitioner was therefore denied his right to a fair trial.

6.      The facts alleged before the grand jury do not support an indictment for the crime charged; the Petitioner's indictment is therefore invalid, and the trial court lacked jurisdiction.

7.      The cumulative effect of the errors cited heretofore, and others apparent from the face of the record served to deny the Petitioner a fair trial.

(Document No. 1, pp. 5 - 6.) On March 11, 2003, the West Virginia Supreme Court of Appeals denied Petitioner's appeal. (Document No. 71-2, p. 7.) Petitioner did not seek review in the United States Supreme Court.

**2.      State *Habeas* Proceedings:**

On May 25, 2004, Petitioner, acting *pro se*, filed a Petition for Writ of *Habeas Corpus* in the Circuit Court of Raleigh County. Daye v. State, Civil Action No. 04-C-531 (Cir. Ct. Raleigh Co. June 9, 2015); (Document No. 71-4.) Petitioner raised the following grounds for *habeas* relief: (1) Violation of the Three Term Rule; (2) Violation of the Interstate Agreement on Detainers; (3) Ineffective Assistance of Counsel; (4) Double Jeopardy; (5) Entrapment; (6) Defective Indictment; (7) Denial of Fundamental Fairness as to testimony taken at trial; (8)

3

Failure to disclose exculpatory evidence; and (9) Denial of right against cruel and unusual punishment. (Id., p. 6.) On June 15, 2004, Petitioner amended his *habeas* Petition to include his claim that "his conviction was based upon evidence of Daye's prior convictions which should have been excluded and the status element of the prior offense not submitted to the jury because the probative value of Daye's admission was substantially outweighed by the danger of unfair prejudice to Daye." (Id., p. 7.) By Order entered on June 9, 2005, the Circuit Court summarily denied Petitioner's Petition. (Id., pp. 2 - 18.)

On July 20, 2005, Petitioner appealed the Circuit Court's denial of his Petition for *Habeas Corpus*. On May 26, 2006, the West Virginia Supreme Court of Appeals accepted Petitioner's appeal. State ex rel. Daye v. McBride, 222 W. Va. 17, 658 S.E.2d 547 (2007); (Document No. 71-2.) On June 27, 2007, the West Virginia Supreme Court affirmed the Circuit Court's decision in part and remanded the case for further proceedings. Specifically, the West Virginia Supreme Court affirmed the Circuit Court's decision on the issue of the Rule 35 correction of an illegal sentence and remanded for "further proceedings on all issues not decided in this opinion."[1] (Id.)

On October 19, 2007, the Circuit Court appointed Matthew A. Victor as *habeas* counsel. (Document No. 71-1, p. 10.) Mr. Victor filed Petitioner's Amended *Habeas* Petition on August

---

[1]  Specifically, the West Virginia Supreme Court stated as follows (Document No. 71-2, p. 13.):
> Finally, we observe from the appellant's brief that his counsel has indicated that he received a limited copy of the record. For this reason, appellant's counsel requested that the Court limit its consideration in the instant case to the issues presented in this appeal and that all other issues identified in appellant's original *pro se* petition be deferred for possible consideration at a later date. Counsel for the State conceded in her brief that the appellant may have further issues not presented in the present appeal and suggested that the appellant's case be remanded to the trial court for appointment of counsel and further proceedings on the remaining issues. We agree with these suggestions. Accordingly, we remand this case for appointment of counsel and further proceedings on all issues not decided in this opinion.

29, 2008. (Id.) Mr. Victor subsequently filed a motion to withdraw as counsel, which was granted. (Id.) On March 18, 2009, the Circuit Court appointed Lonnie C. Simmons as counsel and directed that an Amended *Habeas* Petition and *Losh* List to be filed by counsel. (Id., p. 11.) Petitioner, by counsel, filed his Amended Petition and *Losh* List on May 20, 2010. (Id.) Petitioner raised the following grounds for *habeas* relief:

1. Petitioner asserts that his incarceration is illegal in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article III, §§ 1, 5, 10, and 14 of the West Virginia Constitution, because newly discovered exculpatory evidence should have been disclosed by the State under *Brady v. Maryland*. Since it was not, he asserts his convictions in Case Numbers 00-F-36-K and 01-1F-158-H must be aside.

2. Petitioner asserts that his incarceration is illegal in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United Constitution and Article III, Sections 1, 5, 10, and 14 of the West Virginia Constitution, because Petitioner's life sentence under the habitual offender statute was constitutionally disproportionate, as all three underlying convictions were for nonviolent offenses to wit: possession of a controlled substance with intent to deliver.

3. Petitioner asserts that his incarceration is illegal in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article III, §§ 1, 5, 10, and 14 of the West Virginia Constitution, because the trial court incorrectly explained the law to him in the recidivist proceeding. Alternatively, Petitioner asserts that his incarceration is illegal and in violation of his constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article III, Sections 1, 5, 10, and 14 of the West Virginia Constitution, because he was denied effective assistance of counsel, who failed to correctly advise him regarding the law in the recidivists proceeding.

4. Petitioner asserts that his incarceration is illegal in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article III, §§ 1, 5, 10, and 14 of the West Virginia Constitution, because:

   a. The West Virginia Supreme Court has repeatedly held that once a defendant begins serving a sentence, trial courts have no authority

5

or jurisdiction to increase the sentence, under double jeopardy principles;

b.      Only the specific sentence enhancement under W. Va. Code § 60A-4-408 can be applied where the defendant has multiple convictions under the Uniform Controlled Substances Act; and

c.      Rule 35(a) only permits a trial court to correct an illegal sentence.

5.      Petitioner asserts that his incarceration is illegal in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article III, §§ 1, 5, 10, and 14 of the West Virginia Constitution, because his convictions in case numbers 97-F-16-H and 99-IF-69-K should be invalidated for multiple reasons.

a.      The plea of guilty for possession with intent to deliver a controlled substance in Case No. 99-IF-69-K lacked any factual basis whatsoever, and for that reason must be reversed.

b.      The Court erred in sentencing the Petitioner to a life sentence because the sentencing in Case No. 99-IF-69K was for a misdemeanor.

c.      Probation should have been concurrent in 97-F-16-H and 99-IF-69-K precluding recidivist action.

6.      Petitioner asserts that his incarceration is illegal in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article III, §§ 1, 5, 10, and 14 of the West Virginia Constitution, because the State insisted upon presenting other criminal convictions evidence, where Petitioner's prior conviction was a status element of the crime, when Petitioner repeatedly requested to stipulate to the prior convictions.

7.      Petitioner asserts that his incarceration is illegal in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article III, §§ 1, 5, 10, and 14 of the West Virginia Constitution, because he was denied effective assistance of counsel when his lawyer presented a jury instruction advising the jury that the element of intent could be assumed.

8.      Petitioner asserts that his incarceration is illegal in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article III, §§ 1, 5, 10, and 14 of the West Virginia Constitution, because the Interstate Agreement on Detainers was violated

in this case.

(Id., pp. 23 - 108.) In his *Losh* List, Petitioner asserted the following grounds:

1.    Trial Court lacked jurisdiction;
2.    Statute under which conviction obtained is unconstitutional;
3.    Denial of right to a speedy trial;
4.    Involuntary guilty plea in Case No. 99-IF-69-K;
5.    Failure of counsel to take an appeal in Case No. 97-F-16-H;
6.    Consecutive sentence for same transaction;
7.    Suppression of helpful evidence by the prosecutor;
8.    State's knowing use of perjured testimony;
9.    Unfulfilled plea bargains;
10.   Information in pre-sentence report erroneous;
11.   Ineffective assistance of counsel;
12.   Double jeopardy;
13.   Irregularities in arrest;
14.   No preliminary hearing;
15.   Illegal detention prior to arraignment;
16.   Defects in indictment;
17.   Pre-trial delay;
18.   Claims concerning use of informers to convict;
19.   Constitutional errors in evidentiary rulings;
20.   Instructions to the jury;
21.   Sufficiency of evidence;
22.   Question of actual guilt upon an acceptable guilty plea;
23.   Severer sentence than expected;
24.   Excessive sentence; and
25.   Amount of time served on sentence, credit for time served.

(Id., pp. 108 - 115.) The State filed its Response on January 14, 2011. (Id., p. 11.) On May 12, 2011, Petitioner filed a Motion for Appointment of New Counsel. (Id.) On December 12, 2011, Mr. Simmons filed a Motion to Withdraw as Counsel. (Id.) Subsequently, Petitioner filed a "Motion in Support of Attorney Lonnie C. Simmons' Motion to Withdraw, and Motion of Petitioner to Represent Himself in Writ of Habeas Corpus." (Id.) By Order entered on March 7, 2012, the Circuit Court granted Mr. Simmons' Motion to Withdraw and Petitioner's Motion to Represent Himself. (Id., p. 12.) An omnibus hearing was conducted on May 9, 2012. (Id.) On

January 28, 2013, Circuit Court Judge John A. Hutchison entered an order recusing himself from the case and requesting that the West Virginia Supreme Court assign a judge to the foregoing case. (Id.) Subsequently, the West Virginia Supreme Court appointed Circuit Court Judge William J. Sadler to preside over the *habeas* proceeding. (Id.) A Status Conference was conducted on April 11, 2013. (Id.) During the Status Conference, Petitioner made a discovery request for James Ewell's criminal records located in the Magistrate Court for Raleigh County. (Id., p. 12.) The Circuit Court granted Petitioner's requests and provided a copy of the Mr. Ewell's records as filed in Case Numbers 99-M-2481 and 99-M-4519. (Id.) By Orders entered on May 23, 2013, and May 28, 2013, the Circuit Court denied Petitioner's Motion for Post-Conviction Bail and Motion to Correct or Amend Sentence. (Id.) After addressing the merits of Petitioner's *habeas* claims, the Circuit Court denied Petitioner's Petition for Writ of *Habeas Corpus* in a lengthy Order dated August 16, 2013. (Document No. 71-1.)

Petitioner filed an appeal concerning the Circuit Court's decision denying his *habeas* Petition. Daye v. Plumley, Case No. 13-0913 (W.Va. April 4, 2014); (Document No. 71-3.) Specifically, Petitioner asserted the following errors:

1.    The Circuit Court erred in refusing Petitioner's subpoena requests and in not ruling on discovery issues prior to the omnibus hearing.

2.    *Brady v. Maryland*, 373 U.S. 83 (1963) was violated;

3.    The imposition of a life sentence pursuant to the recidivist statute was unconstitutional;

4.    The State was impermissibly allowed to present the name and nature of Petitioner's prior offenses despite his offer to stipulate to the previous offenses;

5.    A jury instruction on intent was unconstitutional;

6.    The State violated a plea agreement when sentences were not run concurrently;

7.      Petitioner did not waive his right to be indicted; and

8.      An adequate factual basis did not exist for Petitioner's plea.

(Id.) By Memorandum Decision filed on April 4, 2014, the West Virginia Supreme Court of Appeals affirmed the decision of the Circuit Court. (Id.)

**3.      Federal Proceedings:**

On March 31, 2008, Petitioner, an inmate formerly incarcerated at Mount Olive Correctional Complex ["MOCC"], and acting *pro se*, filed his Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody and "Motion to Hold in Abeyance Petitioner's Petition."[2] (Document Nos. 1 - 3.) Petitioner alleges the following grounds for *habeas* relief:

1.      Whether double jeopardy and collateral estoppel principles precluded the State from seeking an additional enhancement of Petitioner's sentence to life under W.Va. Code § 61-11-18 where the new sentence was an increase and the State had already prevailed in enhancing Petitioner's sentence to two to thirty years under W.Va. Code § 60A-4-408 as a second or subsequent offender, in violation of clearly established federal law and the United States Constitution.

2.      Whether the more specific recidivist statute (W.Va. Code § 60A-4-408) should have taken precedent over West Virginia's general habitual criminals statute, W.Va. Code §61-11-18, where the State had originally used the first and Petitioner was convicted of non-violent drug offenses. The State Court decision was therefore in violation of clearly established federal law.

3.      Whether the offense of possession with the intent to deliver a controlled substance without specific violence to an actual person warrants a life sentence as analyzed under the West Virginia Constitution's proportionality principle which states that all punishment must be proportionate to the severity, degree and circumstances of the offense.

---

[2]   Because Petitioner is acting *pro se*, the documents which he has filed in this case will be held to a less stringent standard than if they were prepared by a lawyer and therefore, they will be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

9

> Whether the West Virginia Supreme Court, in affirming the decision of the lower Court finding controlled substance offenses involving crack cocaine presumptively crimes of violence, is systematic racism. The decision of the lower Court therefore violates Petitioner's right to equal protection of the law and also violates clearly established federal law.

(Document No. 1, pp. 7 - 21.) In support of his Motion to Hold in Abeyance, Petitioner stated as follows: (1) The one-year period of limitation prescribed by 28 U.S.C. § 2244(d)(1) for filing his Section 2254 Petition had nearly expired; and (2) The West Virginia Supreme Court of Appeals had resolved certain of his State *habeas* claims and had remanded his State *habeas* proceedings back to the Circuit Court for consideration of other issues. (Document No. 2.) Petitioner, therefore, argued that his federal *habeas* Petition should be stayed and held in abeyance pending resolution of his State *habeas* proceedings. (Id.)

As Exhibits, Petitioner attached the following: (1) A copy of the Circuit Court's "Order Denying Petitioner's Writ of Habeas Corpus" filed August 23, 2005 (Document No. 1-1.); (2) A copy of the West Virginia Supreme Court of Appeals' Order filed June 27, 2007, affirming in part and remanding in part the Circuit Court's denial of Petitioner's *habeas* petition (Document No. 1-2.); (3) A copy of Petitioner's Petition for Rehearing as filed with the West Virginia Supreme Court on July 12, 2007 (Document No. 1-3.); (4) A copy of the West Virginia Supreme Court's Order dated March 10, 2008, denying Petitioner's Petition for Rehearing (Document No. 1-4, p. 1.); (5) A copy of a letter to Petitioner from Attorney Lonnie C. Simmons dated March 25, 2008 (Id., p. 2.); and (6) A copy of the West Virginia Supreme Court's Order dated March 17, 2008 (Id., pp. 3 - 4.).

On June 10, 2008, Respondent filed a Response to Petitioner's Section 2254 Petition and a Response in Support of Petitioner's Motion for Stay and Abeyance. (Document Nos. 11 and

12.) Respondent acknowledged that "Petitioner's three federal claims raised in the present petition have been exhausted in the state courts." (Id.) Respondent further concurs that Petitioner's State *habeas* proceedings remain pending in consideration of "additional habeas issues" by virtue of the West Virginia Supreme Court of Appeals' remand. (Id.) Respondent, therefore, "join[ed] the Petitioner in moving this Court to stay proceedings on the present federal petition on the grounds that Petitioner has been given an opportunity by the West Virginia Supreme Court of Appeals to properly exhaust his available state court remedies with respect to additional habeas claims, as required by 28 U.S.C. § 2254(b)." (Id.)

By Order entered on March 3, 2009, the Court granted Petitioner's "Motion to Hold in Abeyance 2254 Petition for Habeas Corpus." (Document No. 16.) The undersigned directed that Petitioner and/or Respondent notify the Court promptly when Petitioner's State *habeas* proceedings were concluded. (Id.) On April 14, 2014, Petitioner filed his "Notice of Exhaustion of State Court Remedies and Motion to Reopen § 2254 Petition." (Document Nos. 47.) Specifically, Petitioner advised the Court that his State *habeas* proceedings were concluded. (Id., p. 1.) As an Exhibit, Petitioner attached a copy of the West Virginia Supreme Court of Appeal's "Memorandum Decision" as filed on April 4, 2014, affirming the denial of his *habeas* petition. (Id., pp. 2 - 3.) Respondent filed his Response on April 30, 2014, stating that he had no objection the case returning to the active docket. (Document No. 57.)

In his "Notice of Exhaustion of State Court Remedies and Motion to Reopen § 2254 Petition," Petitioner further requested that "this court reopen his § 2254 petition by ordering the Office of Attorney General to answer the three grounds raised in the original petition along with the grounds raised in the petition that accompanies the current notice and motion." (Document

11

No. 47, p. 1.) Petitioner filed a copy his Supplemental Section 2254 Petition and Memorandum in Support. (Document Nos. 44 and 45.) Petitioner explained that he wished to amend his Petition to include claims recently considered in the State *habeas* proceedings, which "include[d] eight additional grounds to the three (3) grounds he has already raised in his original habeas corpus." (Document No. 44.) Specifically, Petitioner asserted the following "eight additional grounds":

1.    The Petitioner's due process rights were violated when the Circuit Clerk refused to sign-off on Petitioner's subpoenas and the Court failed to issue a ruling on discovery prior to the habeas hearing.

2.    Prosecutorial withholding of evidence violated Petitioner's constitutional rights under <u>Brady v. Maryland</u>.

3.    The Petitioner's life recidivist sentence violated his rights under the United States Constitution's Eighth Amendment, Due Process, Equal Protection, and the principles of collateral estoppel.

4.    Petitioner's right to a fair trial was violated when the Court allowed the prosecution to present the name and nature of Petitioner's prior offenses over Petitioner's request to stipulate to the prior offense over Petitioner's request to stipulate to the prior offense evidence that was a status element of the offense in accordance with <u>United State v. Old Chief</u>.

5.    Petitioner's due process rights were violated when the trial court instructed the jury that "the law assumes a person intends the ordinary consequences of his voluntary acts" in violation of <u>Sanstrom v. Montana</u>.

6.    The trial court violated Petitioner's due process rights when the sentences in Case Nos. 97-F-16-H and 99-IF-69-K were not run concurrently as promised and when the Court changed the terms of the plea in Petitioner's absence.

7.    The Petitioner's right to due process was violated when the trial court failed to inform Petitioner of his right to have a grand jury return an indictment before the plea in Case No. 99-IF-69-K.

8.    The Petitioner's right to due process was violated when the State failed to provide a factual basis for the plea in Case No. 99-IF-69-K.

(Document No. 45.) By Order entered on May 6, 2014, the Court granted Petitioner's Motion to Reopen and Motion to Amend. (Document No. 59.) The Court further directed that Respondent file an Answer to the allegations contained in the Petitioner's Original and Amended Petition. (Id.)

On July 7, 2014, in response to the Court's Order, Respondent filed his Answer, Motion for Summary Judgment and Memorandum in Support thereof with Exhibits. (Document Nos. 70 - 72.) As Exhibits, Respondent attaches the following: (1) A copy of the Circuit Court's "Order Denying Petition for Omnibus Writ of Habeas Corpus and Resolving Other Matters Raised in Case Nos. 97-F-16-H, 99-IF-69-K, 00-F-36-K & 01-IF-158" dated August 16, 2013 (Document No. 71-1.); (2) A copy of State ex. rel. Daye v. McBride, 222 W.Va. 17 (2007) (Document No. 71-2.); (3) A copy of Daye v. Plumley, 2014 WL 1345493 (W.Va. April 4, 2014) (Document No. 71-3.); (4) A copy of the Circuit Court's "Order Denying Petitioner's Writ of Habeas Corpus" dated August 23, 2005 (Document No. 71-4.); (5) A copy of the Information as filed Case No. 01-IF-158-H (Document No. 71-5.); (6) A copy of the Circuit Court's Sentencing Order dated May 5, 1998, as filed in Case No. 97-F-16 (Document No. 71-6, pp. 2 - 3.); (7) A copy of the Circuit Court's Sentencing Order as filed in Case No. 99-IF-69-K (Id., pp. 4 - 5.); (8) A copy of the Status Conference transcript as filed in Case No. 01-IF-158-H involving the filing of the Information (Document No. 71-7.); (9) A copy of the Circuit Court's "Order Sentencing Defendant" as filed in Case Nos. 00-F-36-K and 01-IF-158-H (Document No. 71-8.); (10) A copy of the Circuit Court's "Order Granting Motion to Correct Plea and Sentencing Orders" as filed in Case No. 99-IF-69-K (Document No. 71-8.); (11) A copy of the Circuit Court's "Order Denying Defendant's Motion to Set Aside Verdict, Denying Motion for New Trial, Granting Motion of the State to Correct Sentence, and Granting Motion to Withdraw as Counsel" as filed

in Case Nos. 00-F-36-K and 01-IF-158-H (Document No. 71-10, pp. 2 - 3.); (12) As copy of the transcripts from the Motion Hearing conducted on October 11, 2001 (Id., pp. 4 - 37.); (13) A copy of Petitioner's Trial Transcripts (Document Nos. 71-11 and 71-12.); and (14) A copy of Petitioner's plea and sentencing transcripts (Document No. 71-13.).

On July 10, 2014, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Petitioner, advising him of his right to file a response to Respondent's Motion for Summary Judgment. (Document No. 75.) On August 19, 2014, Petitioner filed his Response in Opposition. (Document No. 77.) As Exhibits, Petitioner attached the following: (1) A copy of a letter from Attorney Lonnie Simmons dated January 4, 2012, addressed to Rory Perry, Judge Hutchison, Prosecutor Thomas Truman, and Petitioner (Document No. 77-1, p. 2.); (2) A copy of an Order entered by the Circuit Court providing Mr. Simmons with a complete copy of the files in Case Nos. 96-F-16, 97-F-16, and 99-IF-69. (Id., pp. 2 - 3.); (3) A copy of a letter from Attorney Lonnie Simmons dated February 16, 2010, addressed to Petitioner (Id., p. 3.); (4) A copy of Petitioner's "Motion for Freedom of Information Act" and the transcript of a hearing conducted on March 1, 2002 in Case No. 01-C-1034 (Id., pp. 5 - 9.); (5) A copy of the transcript of a pretrial motions hearing conduct on July 9, 2001 in Case No. 00-F-36 (Id., pp. 10 - 19.); (6) A copy of pertinent pages from a decision issued by the Lawyer Disciplinary Board on February 8, 2013 (Id., pp. 20 - 23.); (7) A copy of Petitioner's "Motion for Judgment on the Pleadings" as filed in Case No. 04-C-531 (Id., p. 25.); (8) A copy of the Circuit Court's "Order Providing Petitioner Copies of Outstanding Transcripts" in Case No. 04-C-531 (Id., pp. 27 - 28.); (9) A copy of the "State Instruction No. 1" as proposed in Case No. 00-F-36 (Id., pp. 30 - 31.); (10) A copy of the "Jury Verdict Form" (Id., p. 31.); (11) A copy of the Circuit Court's "Order

14

Re-Setting Trial and Ruling On Pre-Trial Motions" as filed in Case No. 00-F-36 (<u>Id.</u>, pp. 31 - 32.); (12) A copy of the State's "Motion to Correct Sentence" and Memorandum in Support as filed in Case Nos. 00-F-36 and 01-IF-158 (<u>Id.</u>, pp. 32 - 33.); (13) A copy of the transcripts for a probation violation hearing conducted on February 15, 2001 (Document No. 77-2, pp. 1 - 19.); (14) A copy of transcripts for a status hearing conducted on April 11, 2013, in Case No. 04-C-531 (<u>Id.</u>, pp. 20 - 25.); (15) A copy of the transcripts for a hearing on a motion to amend indictment conducted on July 9, 2001, in Case No. 00-F-36 (<u>Id.</u>, pp. 26 - 37.); and (16) A copy of the transcripts for Petitioner's State *habeas* hearing conducted on May 9, 2012 in Case No. 04-C-531 (<u>Id.</u>, pp. 38 - 70.).

By Proposed Findings and Recommendation entered on February 22, 2016, the undersigned recommended that Respondent's Motion for Summary Judgment (Document No. 71) be granted and Petitioner's Petition (Document Nos. 1, 44, and 45) be dismissed. (Document No. 89.) Recently, it came to the undersigned's attention[3] that unclear language[4] was used in the Analysis section of the Proposed Findings and Recommendation. This language makes it unclear as to whether the undersigned applied the appropriate standard under 28 U.S.C. § 2254(d). Therefore, the undersigned files this Amended Proposed Findings and Recommendation to clarify that the undersigned applied the appropriate standard under Section 2254(d).

## THE APPLICABLE STANDARDS

Federal *habeas* relief is available to a State prisoner under 28 U.S.C. § 2254, only if the

---

[3] By Order entered on September 30, 2016, United States District Judge Thomas E. Johnston determined that similar language used in *Joseph v. Plumley*, Civil Action No. 2:13-28391 was unclear. (Civil Action No. 2:13-28391, Document No. 25.)

[4] The unclear language stated that Petitioner "failed to provide any evidence rebutting the State *habeas* Court's findings of fact and conclusions of law, which are presumptively correct."

prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)(2002); See also Sargent v. Waters, 71 F.3d 158, 160 (4th Cir. 1995). Section 2254(d) provides that when the issues raised in a Section 2254 Petition were raised and considered on the merits in State Court *habeas* proceedings, federal *habeas* relief is unavailable unless the State Court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal *habeas* Court may grant *habeas* relief "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523. A federal *habeas* Court may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the State Court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. Id.(A "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.") When a petitioner challenges the factual determination made by the State Court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the fact.'" 28 U.S.C. § 2254(d)(2). In reviewing a State Court's ruling on post-conviction relief, "we are mindful that 'a determination on a factual issue made by the State

16

court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" <u>Tucker v. Ozmint</u>, 350 F.3d 433, 439 (4th Cir. 2003); <u>also see</u> 28 U.S.C. § 2254(e).[5] On this framework, consideration should be given to Respondent's Motion for Summary Judgment.

## **Motion for Summary Judgment:**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the

---

[5] Title 28, U.S.C. Section 2254(e) provides:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>     (A) the claim relies on –
>         (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>         (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

>     (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

underlying facts in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Petitioner's claims, summary judgment is appropriate.

## <u>ANALYSIS</u>

**1.      <u>Double Jeopardy and Collateral Estoppel</u>:**

In his Petition, Petitioner argues that "double jeopardy and collateral estoppel principles precluded the State from seeking an additional enhancement of Petitioner's sentence to life under <u>W.Va. Code</u> § 61-11-18 where the new sentence was an increase and the State had already prevailed in enhancing Petitioner's sentence to two to thirty years under <u>W.Va. Code</u> § 60A-4-408 as a second or subsequent offender." (Document No. 1, pp. 11 - 13.) Petitioner asserts that the foregoing violated "clearly established federal law and the United States Constitution." (<u>Id.</u>) Petitioner explains that the trial court initially sentenced him to two to thirty years even though the trial court found that the State's attempt to enhance his sentence to life pursuant to W. Va. Code § 61-11-18 was proper. (<u>Id.</u>, p. 12.) Petitioner notes that the trial court specifically declined to sentence him to life as a habitual offender. (<u>Id.</u>) Petitioner complains that the trial court improperly granted the State's subsequent Motion to Correct Sentence pursuant to

18

Rule 35(a) and sentenced him to life. (Id.) Petitioner argues that his re-sentencing violated the principles of double jeopardy and collateral estoppel. (Id.)

In his Motion for Summary Judgment, Respondent first argues that "Petitioner cites no authority to support his argument that the State violated his constitutional rights, or the principles of double jeopardy and collateral estoppel." (Document No. 72, p. 13.) Respondent asserts that "[t]hese claims amount to nothing more than 'unsupported, conclusory allegations' that 'do not entitle a habeas petitioner to relief.'" (Id.) Second, Respondent argues that "Petitioner has mis-characterized the sentencing court's correction of an illegal sentence as an 'additional enhancement,' which is simply not the case." (Id.) Respondent contends that the first State *habeas* Court correctly found that "[d]ouble jeopardy did not attach in the instant case because . . . the trial court was not 'punishing' [the Petitioner]' nor was he 'prosecuted twice' for the same offense." (Id., pp. 13 - 14.) Respondent asserts that "Petitioner has failed to rebut the presumption of correctness that must be attached to the West Virginia Supreme Court's conclusion that 'the trial court erred in imposing the initial sentence, and therefore properly corrected the sentence pursuant to the authority under West Virginia Rules of Criminal Procedure, Rule 35(a)." (Id., p. 15.)

In Response, Petitioner appears to change the grounds supporting his double jeopardy claim. (Document No. 77, pp. 15 - 18.) Petitioner now argues that the "State committed double jeopardy when the State filed a recidivists information under W. Va. Code § 61-11-18 & 19 after it had already litigated the recidivist issue under W. Va. Code § 60A-4-408." (Id.) Petitioner states that he "was prosecuted twice as a recidivist based on the same felony convictions in Case Nos. 97-F-16, 99-IF-69, and 00-F-36. This is because Daye was convicted once under W. Va.

19

Code § 60A-4-408 and again under W. Va. Code § 61-11-18 & 19." (Id., p. 15.) Petitioner,
therefore, argues that the Court should "dismiss the State's second recidivist information which
was filed by the State under W. Va. Code § 61-11-18 & 19 after the State had already prevailed
in its previous recidivist action filed under W. Va. Code § 60A-4-408 in the main trial." (Id., p.
18.)

Regarding Petitioner's above *habeas* claim as presented in his Petition, the West Virginia
Supreme Court found as follows:

> The [Petitioner] claims, in effect, that once the trial court refused to
> impose the mandatory life sentence, despite his conviction as a habitual offender,
> the court lost the power to correct its mistake because the result would be an
> increase in the sentence. A close examination of our decisions, however, does not
> support the [Petitioner] in this regard but rather points to a different conclusion. In
> both *State ex rel. Williams v. Riffe*, 127 W.Va. 573, 34 S.E.2d 21 (1945) and
> *Sellers v. Broadwater*, 176 W.Va. 232, 342 S.E.2d 198 (1986), cited by the
> [Petitioner], the trial court attempted to set aside plea and sentencing after protests
> by victims' families. In *State ex rel. Roberts v. Tucker*, 143 W.Va. 114, 100
> S.E.2d 550 (1957), also cited by the [Petitioner], the trial court attempted to
> increase the original sentence after the defendant escaped from jail. In the cases
> cited by the [Petitioner], unlike the instant case, the original sentences were *legal*.
> Therefore, the Constitutional prohibition against double jeopardy, W.Va. Const.,
> art. III, § 5, barred imposition of an increased sentence.
>
> In the instant case because of our holdings in *Cobb, supra*, and *Combs,
> supra*, the initial sentence imposed by the trial court was *illegal*. Therefore, when
> properly applying the mandatory language of W.Va. Code § 61-11-18 (2000) and
> W. Va. Code § 61-11-19 (1943), the trial court had a duty to correct the initial
> *illegal* sentence and sentence the [Petitioner] to a state correctional facility for
> life.

(Document No. 71-2, p. 10.)

The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through
the Fourteenth Amendment, provides that no person shall be "subject for the same offense to be
twice in jeopardy of life or limb." U.S. Const. Amend. V. Essentially, the Double Jeopardy
Clause "protects against multiple punishments for the same offense." North Carolina v. Pearce,

395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 65 (1969). When consecutive sentences are imposed upon the conclusion of a single criminal trial, "the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). In Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed 306 (1932), the Supreme Court devised the following test to determine whether two offenses are sufficiently distinguishable to allow the imposition of multiple punishments: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Id. "If each [offense] requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." Iannelli v. United States, 420 U.S. 770, 785, n. 17, 95 S.Ct. 1284, 1294, n. 17, 43 L.Ed.2d 616 (1975).

Furthermore, the Double Jeopardy Clause is violated when a defendant has fully suffered a lawful punishment for his crimes and the sentencing court re-sentences defendant to an enhanced punishment. Ex parte Lange, 85 U.S. 163, 21 L.Ed. 872 (1873); United States v. Silvers, 90 F.3d 95, 101 (4th Cir. 1996)(the Double Jeopardy Clause is violated by re-sentencing of a defendant, who has fully discharged his sentence, to a more severe sentence). "[I]n order to determine whether an increase in the sentence is essentially a multiple punishment for the same offense," the Court should focus on "whether the defendant had a legitimate expectation of finality as to the severity of his sentence." United States v. Bello, 767 F.2d 1065, 1070 (4th Cir. 1985), citing United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980).

21

The "pronouncement of a sentence does not possess the finality of a verdict of acquittal for double jeopardy purposes and that imposition of a particular sentence is not equivalent to a judgment of acquittal as to all greater sentences." United States v. Lundien, 769 F.2d 981, 985 (4th Cir. 1985), citing DiFrancesco, 449 U.S. at 133-36, 101 S.Ct. at 435-37.

The undersigned will first consider Petitioner's double jeopardy argument as presented in his Petition. In the instant case, Petitioner was convicted of possession of "crack" cocaine with intent to deliver, second offense. The day following Petitioner's conviction, the State filed an Information pursuant to W.Va. Code § 61-11-19 stating that Petitioner had been convicted of three prior drug convictions. A hearing on the Information was conducted on September 6, 2001, where Petitioner admitted he was the person convicted of three prior drug convictions. On September 26, 2001, the Circuit Court sentenced Petitioner to an indeterminate term of not less than two nor more than thirty years pursuant to the enhancement provisions of W. Va. Code § 60A-4-408. The Circuit Court declined to enhance Petitioner's sentence pursuant to W. Va. Code § 61-11-18. On October 2, 2001, the State filed a Motion for Correction Sentence pursuant to Rule 35(a) contending that W. Va. Code § 61-11-18 required a life sentence. On October 11, 2001, the Circuit Court re-sentenced Petitioner to life in prison. The undersigned finds that Petitioner did not have a legitimate expectation of finality as to the severity of his original sentence. The State filed its Motion for Correction of Sentence approximately one week after Petitioner's original sentencing. Nine days later, the trial court corrected Petitioner's sentence by imposing a life sentence. West Virginia Code § 61-11-8(c) clearly provided that "[w]hen it is determined, as provided in section nineteen [§ 61-11-19] of this article, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a

22

penitentiary, the person *shall* be sentenced to be confined in the state correction facility for life. W.Va. Code § 61-11-18(emphasis added); State ex rel. Cobb v. Boles, 149 W.Va. 365, 141 S.E.2d 59 (1965)(finding that the life sentence language of W. Va. Code § 61-11-18 is mandatory); State ex rel. Combs v. Boles, 151 W.Va. 194, 151 S.E.2d 115 (1966)(the life sentence language of W. Va. Code § 61-11-18 is mandatory). The undersigned, therefore, finds no double jeopardy violation where Petitioner's sentence was appropriately corrected and Petitioner had only served approximately two weeks of his original sentence. See Lundien, 769 F.2d at 985(finding no double jeopardy violation where defendant had only served five days prior to re-sentencing and had not fully suffered a lawful punishment for his crimes); Barker v. McBride, 2006 WL 1867270 (N.D.W.Va. June 30, 2006)(finding that despite the commencement of petitioner's original sentence, the petitioner had no legitimate expectation of finality as to the severity of his sentence and suffered no double jeopardy violation where an enhanced recidivist sentence was imposed). Thus, the West Virginia Supreme Court's decision on the above claim was neither contrary to, nor an unreasonable application of, clearly established federal law; nor was the decision based upon an unreasonable determination of the facts presented in the State court proceedings. Accordingly, the undersigned respectfully recommends that the District Court find that Respondent is entitled to summary judgment on the foregoing claim.

Second, the undersigned will consider Petitioner's double jeopardy argument as presented in his Response. The undersigned first finds that the foregoing argument is unexhausted. Proper exhaustion requires that a claim be "fairly presented." "A claim is fairly presented when the petitioner presented to the state courts the substance of his federal habeas

23

corpus claim. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." <u>Matthews v. Evatt</u>, 105 F.3d 907, 911 (4th Cir. 1997), *abrogation on other grounds recognized*, <u>United States v. Barnett</u>, 644 F.3d 192 (4th Cir. 2011). In the instant case, a review of the record reveals that Petitioner never presented his above claim to the West Virginia Supreme Court. Thus, Petitioner's claim is unexhausted and procedurally defaulted.[6] Notwithstanding the foregoing, the undersigned will briefly consider Petitioner's claim. Petitioner argues that he was subjected to double jeopardy when he was sentenced pursuant to both W. Va. Code § 60A-4-408 and W. Va. Code. § 61-11-18. West Virginia Code § 60A-4-408 provides that "[a]ny person convicted of a second or subsequent offense under this chapter may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that other authorized, or both." W. Va. Code § 60A-4-408. As stated above, West Virginia Code § 61-11-18(c) provides that "[w]hen it is determined, as provided in section nineteen [§ 61-11-19] of this article, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person *shall* be sentenced to be confined in the state correction facility for life. W. Va. Code § 61-11-18. Despite Petitioner's argument to the contrary, Petitioner did not receive consecutive sentences pursuant to W. Va. Code § 60A-4-408 and W. Va. Code § 61-11-18. The record reveals that the trial court initially imposed a sentence pursuant to W. Va. Code § 60A-4-408 and subsequently corrected Petitioner's sentence by imposing a sentence pursuant to W. Va. Code § 61-11-18. Thus, Petitioner's foregoing argument is without merit. Based upon the foregoing, the undersigned

---

[6]   Petitioner's claim is unreviewable unless he can "demonstrate cause for the default and actual prejudice as a result of the alleged violations of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Wilson v. Ozmint*, 352 F.3d 847, 868 *4th Cir. 2003)(quoting, *Coleman*, 501 U.S. at 735, n 1, 111 S.Ct. at 2557.)

respectfully recommends that Petitioner's above claim be dismissed.

**2.      Proper Sentencing Statute:**

In his Petition, Petitioner argues that "the more specific recidivist statute (W. Va. Code § 60A-4-408) should have taken precedent over West Virginia's general habitual criminal statute, W. Va. Code § 61-11-18, where the State had originally used the first and Petitioner was convicted of non-violent drug offenses." (Document No. 1, pp. 13 - 15.) Petitioner asserts that "the State court decision was therefore in violation of clearly established federal law." (Id., p. 14.) Petitioner contends that "[i]n affirming the decision of the lower court on June 27, 2011, the West Virginia Supreme Court found that although the specific statute (W. Va. Code § 60A-4-408) must take precedent over West Virginia's General Recidivist Statute (61-11-18 & 19), the Court found 'no danger in the sentencing provisions of the Uniform Controlled Substance Act being nullified' by W. Va. Code § 61-11-18 in this particular case, in violation of clearly established federal law, and the Constitution of the United States." (Id., p. 15.)

In his Motion for Summary Judgment, Respondent argues that "Petitioner fails to cite any authority to support his argument that the sentence enhancement provisions of the Uniform Controlled Substance Act, W. Va. Code § 60A-4-408, trumps those contained in W. Va. Code § 61-11-18." (Document No. 72, pp. 15 - 16.) Respondent further states that "this argument is legally unsound, and cannot serve to rebut the presumption of correctness that must be attached to the West Virginia Supreme Court's conclusion that § 61-11-18 was correctly applied to enhance the Petitioner's sentence." (Id.) Respondent argues that the West Virginia Supreme Court appropriately determined that the "sentencing court was required to issue a life sentence pursuant to § 61-11-18 and 19, regardless of the second or subsequent offense provisions of §

60A-4-408." (Id.)

In Response, Petitioner argues that he "was indicted, tried, and convicted on the basis of the specific drug recidivist statute (W. Va. Code § 60A-4-408)." (Document No. 77, pp. 18 - 19.) Petitioner, therefore, argues that "once the State had succeeded in proving to the jury in Case No. 00-F-36-K that Daye had committed the prior felonies in Case No. 97-F-16 and 99-IF-69-K, the court lacked jurisdiction to re-litigate the issue under the general recidivist statute (§ 61-11-18)." (Id.) Petitioner argues that "Respondent's attempt to 'reconcile' the two statutes by claiming that WV Code § 60A-4-408 does not have to be submitted to a jury is therefore an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." (Id.) Petitioner contends that "although the Respondent correctly points out that W. Va. Code § 60A-4-408 does not have to be submitted to a jury, in the case at hand the prosecutor did just that over Daye's many objections [and] the State must therefore be held to its choice and the due process consequences of that choice." (Id.) Finally, Petitioner argues that "West Virginia law requires a showing of actual violence to the person before the general habitual statute is relied on for a life recidivist sentence [and] the absence of violence in this case supports the conclusion that the specific habitual statute, not the general statute, was the proper enhancement vehicle to apply under the circumstances. (Id.)

Regarding Petitioner's above *habeas* claim as presented in his Petition, the West Virginia Supreme Court found as follows:

> The [Petitioner] also contends that in a case where all of a defendant's convictions are drug related, the requirements of W. Va. Code, 61-11-18 (2000) and W. Va. Code, 61-11-19 (1943) must give way to the enhancement provisions of the Uniform Controlled Substances Act, W. Va. Code, 60A-4-408 (1971). The [Petitioner] argues that failure to treat the law in this manner would render the sentence enhancement provisions of the Uniform Controlled Substance Act a nullity.

26

We believe that the [Petitioner's] argument in this regard is without merit because historically the prosecuting attorney has exercised discretion as to whether or not to file an information to seek recidivist enhancements under W. Va. Code, 61-11-18 (2000) and W. Va. Code, 61-11-19 (1943). *See Griffin v. Warden, West Virginia State Penitentiary*, 517 F.2d 756 (4th Cir. 1975). Further, we believe that the filing of such informations pursuant to W. Va. Code, 61-11-19 (1943) is relatively rare and only occurs in more extreme cases where defendant's criminal history suggests that a more severe sentence than may be imposed by the penalty for the underlying offense. Furthermore, since many of the offenses under the Uniform Controlled Substances Act are relatively minor and involve little or no danger to others, they have been inappropriate for the more severe treatment under W. Va. Code, 61-11-18 (2000) and W. Va. Code 61-11-19 (1943). For these reasons we see no danger in the sentence provisions of the Uniform Controlled Substance Act being nullified as suggested by the [Petitioner].

The [Petitioner] also contends that the sentence enhancement provisions of the Uniform Controlled Substance Act, W. Va. Code, 60A-4-408 (1971), should take precedence over the sentence enhancement provision of the recidivist enhancement under W. Va. Code, 61-11-18 (2000) and W. Va. Code, 61-11-19 (1943) because the Uniform Controlled Substance Act is specific to drug related offenses.

This Court has previously held that we apply such a statutory construction only "where the two [statutes] cannot be reconciled." In Syllabus Point 1 of *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984) this Court held: "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter *where the two cannot be reconciled*."(Emphasis added.) In the instant case we believe that the State persuasively argues that the two statutes can be reconciled.

The Uniform Controlled Substance Act, W. Va. Code, 60A-4-408 (1971), provides a lesser, and discretionary, enhancement in any case involving a repeat drug offender. Furthermore, the judge, not the prosecuting attorney, makes the enhanced sentencing decisions under this drug offense statute. The statute applies to both misdemeanor and felony offenses. It does not require the filing of an information by the prosecuting attorney.

In contrast, the general habitual offender statute is utilized only in cases where the totality of a criminal defendant's criminal history makes a mandatory sentence of life imprisonment an appropriate punishment. The procedural provisions of the general habitual criminal offender statute, W. Va. Code 61-11-19 (1943), require the filing of an information by the prosecuting attorney within certain time limits, and the defendant has a right to a jury trial with attendant procedural safeguards.

The [Petitioner] cites to numerous cases from other jurisdictions in support of his position that the sentencing provisions of the Uniform Controlled Substance Act, W. Va. Code, 60A-4-408 (1971), should take precedence over the sentencing provisions of the general habitual offender statute, W. Va. Code, 61-11-18 (2000). The State agrees that some of the cases cited do support the

27

[Petitioner's] position, but that at least one of [Petitioner's] cases support the State's position. The State further contends that other cases are distinguishable from the instant case. Nonetheless, both [Petitioner] and [the State] agree that the issue presented in this case has never been decided in West Virginia.

* * *

. . . Here, after the [Petitioner's] conviction, the State timely filed a recidivist information based on the appellant's two prior felony convictions. The [Petitioner] admitted to the allegations in the information. Once this procedure was completed, the trial court was "without authority to impose any sentence other than as prescribed in W. Va. Code, 61-11-18 (2000)." *See Cobb, supra*, and *Combs, supra*.

We believe that the trial court erred in imposing the initial sentence, and therefore properly corrected the sentence pursuant to the authority under West Virginia Rules of Criminal Procedure, Rule 35(a), *supra*.

Based on the foregoing we hold that when any person is convicted of an offense under the Uniform Controlled Substance Act (W. Va. Code, Chapter 60A) and is subject to confinement in the state correctional facility therefor, and it is further determined, as provided in W. Va. Code, 61-11-19 (1943) that such person has been before convicted in the United States of a crime or crimes, including crimes under the Uniform Controlled Substance Act (W. Va. Code, Chapter 60A), punishable by confinement in a penitentiary, the court shall sentence the person to confinement in the state correctional facility pursuant to the provisions of W. Va. Code, 61-11-18 (2000), notwithstanding the second or subsequent offense provisions of W. Va. Code, 60A-4-408 (1971).

(Document No. 71-2, pp. 10 - 12.)

First, the undersigned finds that Petitioner's above claim is improperly plead. *Habeas* petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 66 (1994). The petition must "set forth in summary form the facts supporting each of the grounds thus specified." Rule 2(c) of the Rules Governing Section 2254 Proceedings in the United States District Courts. "[N]otice pleading is not sufficient [in federal *habeas corpus*], for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" Blackledge v. Allison, 431 U.S. 63, 75 n. 7, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); also see Bernier v. Moore, 441 F.2d 395, 396 (1st Cir. 1971)(stating that "[t]he fundamental purpose of *habeas corpus* would be undermined if the writ were prostituted by

holding it out as available upon mere 'notice' without any showing of entitlement.") The petitioner must come forward with evidence that the claim has merit. Nickerson v. Lee, 971 F.2d 1125 (4th Cir. 1992), cert. denied, 507 U.S. 923, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993), *abrogation on other grounds recognized*, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). Unsupported, conclusory allegations do not entitle a petitioner to relief. See Beasley v. Halland, 649 F.Supp. 561, 566 (S.D.W.Va. 1986)(finding that "[m]ere conclusory charges of perjury and the knowing use of perjured testimony is insufficient to warrant a hearing or habeas relief"); Jones v. Gomez, 66 F.3d 199, 204 - 05 (9th Cir. 1995)(stating that "[c]onclusory allegations which are not supported by a statement of specific facts do want warrant habeas relief"). Concerning his above claim, Petitioner merely concludes his sentencing under West Virginia's General Recidivist Statute (W. Va. Code §§ 61-11-18 & 19) was "in violation of clearly established federal law, and the Constitution of the United States." Petitioner, however, fails to set forth any analysis or explanation as how his sentencing under W. Va. Code §§ 61-11-18 & 19 violated "clearly established federal law." Thus, Petitioner's above *habeas* claim is improperly plead. Petitioner has failed to allege how the West Virginia Supreme Court's decision on the above claim was contrary to, or an unreasonable application of, clearly established federal law; or was a decision based upon an unreasonable determination of the facts.

Finally, the undersigned notes that Petitioner's above *habeas* claim appears to be based upon an alleged violation of State law. Relief under 28 U.S.C. § 2254 is available to State prisoners in "custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (2002). Violations of State law and procedure that do not implicate specific federal constitutional provisions are not cognizable in *habeas* review. See Estelle v. McGuire,

29

502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)("[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions. In conducting *habeas* review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); Fisher v. Angelone, 163 F.3d 835, 854 (4th Cir. 1998). The record reveals that the West Virginia Supreme Court considered and rejected Petitioner's argument that the trial court sentenced Petitioner under the incorrect State statute. As stated above, this Court will not re-examine State court determinations on questions concerning State law. Based upon the foregoing, the undersigned respectfully recommends that Petitioner's above claim be dismissed.

**3.     Sentencing did not violate the Equal Protection Clause or the Eighth Amendment:**

In this Petition, Petitioner argues that his life sentence for possession with the intent to deliver a controlled substance is disproportionate and violates his rights under the Eighth Amendment and Equal Protection Clause. (Document No. 1, pp. 16 - 21.) Petitioner complains that the trial court imposed a life sentence "notwithstanding the West Virginia[7] Constitution's Proportionality Principle which states that all punishment must be proportionate to the circumstances and the degree of the particular crime, and the fact that the Supreme Court had reversed the convictions of similarly situated prisoners based on this same principle." (Id., p. 17.) Petitioner states that the West Virginia Supreme Court "did not directly address this issue under either the dis-proportionality analysis or the equal protection claim." (Id.)

In his Motion for Summary Judgment, Respondent first asserts that "Petitioner fails to support his claim that his life sentence is disproportionate and violates his rights under the

---

[7] To the extent Petitioner is alleging a violation of the West Virginia Constitution, Petitioner's claim is not cognizable in federal *habeas corpus*.

Eighth Amendment and Equal Protection Clause." (Document No. 71, p. 16.) Respondent contends that Petitioner' "merely asserts conclusory allegations without any legal authority." (Id.) Second, Respondent argues that "the law still supports the implementation of a life sentence pursuant to state recidivist policy." (Id.) Respondent explains that Petitioner's Eighth Amendment proportionality challenge must fail "[g]iven the serious and violent nature of each of the Petitioner's felony drug convictions, coupled with his 'long history of recidivism,' and the fact his most recent two drug convictions occurred while he was still on probation on previous drug convictions." (Id., p. 19.) Next, Respondent contends that "Petitioner's argument that the State court's finding that controlled substance offenses involving crack cocaine as presumptively a crime of violence is systemic racism is meritless." (Id., pp. 19 - 20.) Respondent explains that "the West Virginia Supreme Court in *Rodoussakis*, as well as the habeas court, determined that all 'controlled substances as defined in W. Va. Code § 60A-4-401 *et seq.*,' not just those involving crack cocaine, constituted a crime of violence." (Id., p. 20.) Respondent further explains that "the Fourth Circuit ruled that increased penalties for drug offenses involving crack cocaine did not violate the Equal Protection clause." (Id.) Respondent, therefore, argues that he is entitled to summary judgment on the above *habeas* ground. (Id.)

In Response, Petitioner argues "that all African American males who were convicted of drug crimes in West Virginia from 1990 up until today and sentenced to life based on W. Va. Code §§ 61-11-18 & 19, have been obligated to finish their life sentences despite the lack of violence shown in each individual case, while Whites are not being subjected to the same standards." (Document No. 77, pp. 19 - 25.) In support, Petitioner cites the following cases: (1) State v. James Woodson, Case Nos. 04-F-34 and 05-F-22 (Greenbrier County); (2) State v.

Render, Case No. 02-F-195 (Kanawha County); (3) State v. Don Galloway, Case No. _____

(Summers County); and (4) State v. Robert Newsome, Case No. 05-F-32 (Cabell County). (Id.,

p. 20.) Petitioner contends that in the foregoing cases, including his case, "the West Virginia

Supreme Court either denied review without an opinion or affirmed their convictions without

making any distinctions with other cases that were overturned on disproportionality grounds."

(Id.) Petitioner concludes that "in every drug related recidivist case where the defendants are

White, the West Virginia Supreme Court has consistently drafted opinions finding that because

there was no actual or threatened violence to the person, a life sentence was determined to be

disproportionate and not warranted." (Id.) In support of the foregoing, Petitioner cites the

following cases: Wanstreet v. Bordenkircher, 166 W.Va. 576 (1982), State v. Davis, 189 W.Va.

59 (1993), State v. Miller, 184 W.Va. 462 (1990), State v. Deal, 178 W.Va. 142 (1987), and

State v. Wilson, 2012 W.Va. Lexis ___ (2012). (Id.) Petitioner argues that "[d]espite the fact that

[he] had no violence whatsoever in this case, the West Virginia State Courts have ignored

[Petitioner's] disproportionality arguments without drafting any opinion addressing it at all."

(Id.) Petitioner, therefore, requests that "his case be given the same proportionality review as that

given to Wilson, Deal, Davis, and Boso, and that Daye not be made to feel that he is serving a

life recidivist sentence due to racial discrimination." (Id., p. 23.) Petitioner further contends that

"just because the Supreme Court of the United States has declined to reverse life recidivist drug

convictions in the past on claims of racial disparity, does not mean the Supreme Court hasn't

authorized federal courts to do so in obvious cases of racial disparities under the Eighth

Amendment standards of decency test." (Id., p. 20.) Finally, Petitioner argues that Respondent

mis-characterizes the West Virginia Supreme Court's holding in State v. Rodoussakis, 204

W.Va. 58 (1998). (Id., p. 21.) Specifically, Petitioner contends that the "Rodoussakis opinion had nothing to do with defining drug crimes as crimes of violence." (Id., p. 22.) Citing W. Va. Code § 62-15-16, Petitioner argues that the legislature made a clear distinction between crimes of violence and drug related crimes. (Id., pp. 22 - 23.)

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. Amend. VIII. The United States Supreme Court has recognized that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." Rummel v. Estelle, 445 U.S. 263, 271, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). A defendant may challenge the proportionality of a sentence in two ways: (1) An "as-applied" challenge; and (2) A "categorical" challenge. United States v. Cobler, 748 F.3d 570, 575-76 (4th Cir. 2014)(citing Graham v. Florida, 560 U.S. 48, 59-60, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). In an "as-applied" challenge, "a defendant contests the length of a certain term-of-years sentence as being disproportionate 'given all the circumstances in a particular case.'" Id. In a "categorical" challenge, "a defendant asserts that an entire class of sentences is disproportionate based on 'the nature of the offense' or 'the characteristics of the offender.'" Id. Both types of proportionality challenges are limited in scope. Id. The Fourth Circuit has explained the scope of the "as-applied" challenge as follows:

> In the context of an as-applied challenge, the Court has explained that the "narrow proportionality principle" of the Eighth Amendment "does not require strict proportionality between crime and sentence," but "forbids only extreme sentences that are grossly disproportionate to the crime." *Graham*, 560 U.S. at 59-60, 130 S.Ct. 2011(quoting *Harmelin v. Michigan*, 501 U.S. 957, 997, 1000-01, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)(Kennedy, J., concurring))(internal quotation marks omitted). Before an appellate court concludes that a sentence is grossly disproportionate based on an as-applied challenge, the court first must determine that a 'threshold comparison' of the

gravity of the offense and the severity of the sentence 'leads to an inference of gross disproportionality." *Id.*(quoting *Harmelin*, 501 U.S. at 1005, 111 S.Ct. 2680(Kennedy, J., concurring))(brackets omitted). In the "rare case" that a reviewing court concludes that such an inference may be drawn, the court is required to compare the defendant's sentence: (1) to sentences for other offenses in the same jurisdiction; and (2) to sentences for similar offenses in other jurisdictions. *Id.* If this extended analysis validates the threshold determination that the sentence is grossly disproportionate, the sentence is deemed "cruel and unusual" punishment under the Eighth Amendment. *Id.*

Cobler, 748 F.3d at 575. In Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637

(1983), the Supreme Court determined that the defendant's sentence was unconstitutional where

a recidivist defendant had been sentenced to life imprisonment *without parole* for passing a bad

check in the amount of $100. Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637

(1983). The Fourth Circuit, however, noted that "[s]ince the decision in *Solem*, no defendant

before the Supreme Court has been successful in establishing even a threshold inference of gross

disproportionality." Cober, 748 F.3d at 576 (citations omitted). Specifically, the Fourth Circuit

explained as follows:

> Notably, in *Harmelin*, the Court upheld a life sentence without parole for a first-time felon convicted of possession of 672 grams of cocaine. *See* 501 U.S. at 961, 996, 111 S.Ct. 2680. Justice Kennedy, whose concurrence in *Harmelin* later was regard as the controlling opinion" in that case, *Graham*, 560 U.S. at 59-60, 130 S.Ct. 2011, contrasted the "passive" check fraud in *Solem* with the "pernicious" drug offenses that "threaten to cause grave harm to society" by contributing to "violence, crime, and social displacement." 501 U.S. at 1002-03, 111 S.Ct. 2680 (Kennedy, J., concurring).
>
> In another as-applied proportionality challenge, the Supreme Court in *Ewing* reviewed a prison sentence of 25 years to life under California's "three-strikes" statute, imposed for theft of $1,200 in merchandise. 538 U.S. at 19-20, 123 S.Ct. 1179. Employing its analysis from *Solem*, the Court observed that the theft crime was "certainly not 'one of the most passive felonies a person could commit'" and could justify a prison sentence of between 25 years and life imprisonment. *Ewing*, 538 U.S. at 28, 123 S.Ct. 1179 (plurality opinion)(quoting *Solem*, 463 U.S. at 296, 103 S.Ct. 3001); *see also Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)(affirming, upon habeas review, a sentence under California's "three strikes" law of two consecutive terms of 25 years to life in prison for petty theft of videotapes worth about $150).

34

Id. at 576-77.

Concerning a "categorical" challenge, the Fourth Circuit has explained the scope as follows:

> With respect to a categorical challenge, the reviewing court first determines whether a "national consensus against the sentencing practice at issue" is evident from "objective indicia of society's standards, as expressed in legislative enactments and state practice." *Graham*, 560 U.S. at 61, 130 S.Ct. 2011. Next, the court exercises its "independent judgment whether the punishment in question violates the Constitution. *Id.* Thus, a categorical challenge "requires consideration of the culpability of the [class of] offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question." *Id.* at 67, 130 S.Ct. 2011.

Id. at 577. The Fourth Circuit noted that "the Supreme Court had deemed only certain classes of death sentences as being categorically disproportionate" prior to 2010, but recently "the Court has extended its use of the categorical analysis to a very narrow group of non-capital prison sentences involving juvenile offenders." Id. Specifically, the Supreme Court has employed the categorical approach barring certain sentences of life imprisonment without parole for juveniles. Id.(citations omitted). The Supreme Court's "'unprecedented' willingness to reverse noncapital sentences to this narrow, special context of juvenile offenders, for whom a life sentence without parole can be 'likene[d] . . . to the death penalty itself,' particularly given the reality that a juvenile will spend more of his life in prison than an adult." Id.

It is well recognized, however, that "'extensive proportionality analysis' is required 'only in those cases involving life sentences without parole,' or, alternatively, in cases involving 'terms of years without parole' that are functionally equivalent to life sentences 'because of [the defendants'] ages.'" Id.(citing United States v. Rhodes, 779 F.2d 1019, 1028 (4th Cir. 1985); United States v. Wellman, 663 F.3d 224, 231 (4th Cir. 2011)("[E]xtensive proportionality

analyses are only required in those cases involving life sentences without the possibility of parole. In contrast, other lesser sentences that are clearly within the prerogative of Congress and subject to imposition by a district court may be disposed of swiftly.") In the instant case, Petitioner was sentenced to life with the possibility of parole.[8]

Considering the merits of Petitioner's "as-applied" proportionality challenge, the undersigned finds that the relationship between the gravity of Petitioner's offense and the severity of his punishment fails to create the threshold inference of gross disproportionality. Petitioner received a life sentence with the possibility of parole based upon his third conviction for possession of crack cocaine with the intent to deliver. As the United States Supreme Court recognized in Harmelin, drug offenses "threaten to cause grave harm to society" by contributing to "violence, crime, and social displacement." Harmelin, 501 U.S. at 1002-03, 111 S.Ct. 2680. The harshness of Petitioner's sentence reflects the gravity of his crimes. Further, the severity of Petitioner's sentence was based upon his recidivism. On March 28, 1997, Petitioner pled guilty to petty larceny and possession of crack cocaine with intent to deliver (case No. 97-F-16). The Circuit Court sentenced Petitioner to a term of one (1) year on the petty larceny conviction, and a term of not less than one (1) nor more than fifteen (15) years on the conviction of possession with intent to deliver. The Circuit Court suspended the sentences and ordered that Petitioner be sentenced to not less than six (6) months nor more than two (2) years at the Anthony Center for youthful offenders. On April 16, 1998, Petitioner returned from the Anthony Center as a satisfactory inmate and the Court placed Petitioner on probation for a period of three years. On October 6, 1998, while on probation for his 1997 felony conviction, Petitioner was arrested and charged with possession of crack cocaine with intent to deliver. On March 22, 1999, Petitioner

---

[8] Petitioner was recently released on parole after serving approximately 15 years.

pled guilty to possession of a controlled substance with intent to deliver, to wit: crack cocaine and was sentenced to not less than one (1) nor more than fifteen (15) years in the penitentiary (Case No. 99-IF-69). The Circuit Court suspended the sentence and placed Petitioner on probation for a term of two (2) years upon the completion of serving four (4) months of actual confinement. In November, 1999, Petitioner was convicted in Florida for possession of a controlled substance and sentenced to six months in jail. In 2001, Petitioner was convicted in Raleigh County of possession of "crack" cocaine with the intent to deliver, second offense (00-F-36). The underlying conduct supporting Petitioner's 2001 conviction occurred while he was on probation for his 1999 conviction. Thus, the record reveals that Petitioner continuously violated West Virginia law by possessing crack cocaine with the intent to deliver and violated the conditions of his probation. "Recidivism has long been recognized as a legitimate basis for increased punishment." Ewing v. California, 538 U.S. 11, 25, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003). Accordingly, the undersigned finds that Petitioner's "as-applied" proportionality challenge to be without merit.

To the extent Petitioner is asserting a "categorical" proportionality challenge, the undersigned finds it to be without merit. As stated above, the United States Supreme Court has only categorically deemed sentences to be unconstitutionally disproportionate in cases involving (1) sentences of death, or (2) sentences of life imprisonment without parole for juvenile offenders. Petitioner was neither sentenced to death, nor was he a juvenile offender sentenced to life imprisonment without parole. Accordingly, the undersigned finds Petitioner's "categorical" proportionality challenge to be without merit. Based on the foregoing, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment be granted as to

Petitioner's Equal Protection and Eighth Amendment claim.

**4.    The State _Habeas_ Court's Alleged Errors:**

In his Amended Petition, Petitioner argues that his "due process rights were violated when the Circuit Clerk refused to sign off on Petitioner's subpoenas and the Court failed to issue a ruling on discovery prior to the habeas hearing." (Document No. 45, pp. 18 - 23.) First, Petitioner argues that he had "discovery complications" with the State during his _habeas_ proceedings in State court. (Id., p. 18.) Second, Petitioner argues that he and appointed _habeas_ counsel had difficulties obtaining certain records from the Raleigh County Circuit Court. (Id., pp. 18 - 19.) Third, Petitioner complains that "on May 9, 2012, the Circuit Court held a habeas hearing in Civil Action No. 04-C-531 without ever addressing Daye's many motions and letters in regards to discovery and subpoenas for witnesses." (Id., pp. 20 - 21.) Fourth, Petitioner complains that on "May 17, 2013, the State successfully moved the Court to terminate discovery." (Id., p. 21.) Finally, Petitioner complains that "on August 23, 2013, the Court entered a final order finding that Daye had neglected his own discovery requests." (Id.) Petitioner, therefore, contends that "the habeas court abused its discretion when it failed to give Daye the benefit-of-the-doubt and grant his discovery requests." (Id., p. 22.)

In his Motion for Summary Judgment, Respondent argues that "Petitioner had been extended a fair accommodation as a _pro se_ litigant, and received a balanced and fair hearing." (Document No. 72, pp. 20 - 22.) Respondent contends that "Petitioner failed to pursue a hearing on either his discovery motion or the issuance of the subpoenas" until his omnibus hearing on May 9, 2012. (Id., p. 20.) Respondent notes that Plaintiff's excuse for his failure was that he believed "it was the prosecuting attorney's responsibility to make sure his subpoenas were

served, and discovery was supplied." (<u>Id.</u>, p. 21.) Thus, Respondent contends that the "habeas court correctly concluded that the Petitioner had 'received balanced and fair proceedings,' and that although a reasonable accommodation is required to be extended to a *pro se* litigant, the court is not responsible for providing said litigant with legal advice." (<u>Id.</u>) Respondent notes that the *habeas* court correctly concluded that "the issues raised by the Petitioner as the basis for his discovery requests had been 'thoroughly addressed at the underlying trial and no good cause for additional discovery was shown.'" (<u>Id.</u>, pp. 21 - 22.) Finally, Respondent notes that "Petitioner was provided accommodation from the Court with regards to the only discovery that could have potentially impacted his habeas, i.e. the requested James Ewell information, and the Court forwarded said information to the Petitioner directly." (<u>Id.</u>)

In Response, Petitioner argues that the "prosecution has a history of withholding documents during Daye's State court proceedings and misrepresenting its discovery, thus, Daye was not extended a fair accommodation as a *pro se* litigant." (Document No. 77, pp. 3 - 8.) Petitioner alleges that "[t]o this day the State has refused to provide Daye with such documents despite the clear law obligating the State to do so." (<u>Id.</u>, p. 3.) Petitioner further asserts that "Respondent's claim that the Petitioner failed to pursue a hearing on either his discovery motion or the issuance of the subpoenas is completely inconsistent with the record." (<u>Id.</u>, p. 5.) Petitioner claims that "under State law, once subpoenas are filed with the Circuit Clerk's office the Clerk's duty is to sign off on such subpoenas and send the signed copies back for service." (<u>Id.</u>, p. 7.) Petitioner, therefore, argues that "it is clearly unreasonable in light of the evidence presented in the State Court proceeding to blame Daye for the discovery violations committed by the authorities in Raleigh County." (<u>Id.</u>, p. 8.)

Errors occurring in state post-conviction proceedings typically cannot serve as a basis for federal *habeas corpus* relief. See Wright v. Angelone, 151 F.3d 151, 159 (4th Cir. 1998)("[A] challenge to Virginia's state habeas proceedings, cannot provide a basis for federal habeas relief."); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988); see also, Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir.), cert. denied, 495 U.S. 936, 110 S.Ct. 2183, 109 L.Ed.2d 511 (1990) ("[A]n infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition."); Vail v. Procunier, 747 F.2d 277, 278 (5th Cir. 1984)("Infirmities in state habeas corpus proceedings do not constitute grounds for federal habeas relief."). This is because federal *habeas* relief is available "in behalf of a person in custody *pursuant to the judgment of a State court*." 28 U.S.C. § 2254(a)(emphasis added). "Even where there may be some error in state post-conviction proceedings this would not entitle [petitioner] to federal habeas corpus relief since [petitioner]'s claim here represents an attack on a proceeding collateral to the detention of [petitioner] and on the detention itself." Williams v. Missouri, 640 F.2d 140, 144 (8th Cir.), cert. denied, 451 U.S. 990, 101 S.Ct. 2328, 68 L.Ed.2d 849 (1981). Accordingly, the undersigned finds Petitioner's above claim to be without merit.

**5.    Failure to Disclose Exculpatory Evidence:**

In his Amended Petition, Petitioner argues that the "prosecutorial withholding of evidence violated Petitioner's constitutional rights under Brady v. Maryland." (Document No. 45, pp. 23 - 30.) Petitioner argues that the State failed to disclose the following exculpatory and impeachment evidence: (1) "Mr. Ewell had an active Confidential Informant Agreement in place with the State at the time of Daye's August 25, 1999, arrest in Case No. 00-F-36;" and (2) "Mr. Ewell had been arrested again for DUI on October 13, 1999 – two months after Daye's arrest."

(Id., p. 23.) Petitioner argues that "[t]his evidence was exculpatory because during the trial Mr. Ewell told the jury that he had only been arrested for one DUI." (Id.) Petitioner contends that "[b]ecause Mr. Ewell had admitted to entering into a deal with the State to drop his first DUI, Ewell's second DUI arrest raised strong suspicions that Ewell had entered a second agreement with the State to drop the second DUI as well." (Id.) As to the Confidential Informant Agreement, Petitioner contends that during his State *habeas* hearing conducted on May 9, 2012, "[t]he State led Officer Sweeney to swear that Ewell hadn't signed any agreement on August 24, 1999, like Daye had contended, instead the Officer swore that the date on the agreement had to be August 29, 1999, indicating Ewell signed his agreement four days after the Petitioner had already been arrested." (Id., p. 25.) Petitioner contends that he now has a letter written by Officer Sweeney affirming that the Confidential Informant Agreement was signed on August 24, 1999. (Id., p. 26.) Petitioner complains that the State *habeas* Court failed to consider Officer Sweeney's letter. (Id.) Thus, Petitioner concludes that the State *habeas* Court's decision was contrary to clearly established State[9] and Federal law. (Id., pp. 27 - 28.)

In his Motion for Summary Judgment, Respondent argues "[t]here is no factual basis for the Petitioner's claim that the prosecutor withheld evidence or that the allegedly newly discovered evidence would have altered the outcome." (Document No. 72, pp. 22 - 27.) First, Respondent asserts that "the lower court correctly concluded the FOIA documents referenced by the Petitioner were not exculpatory." (Id., p. 24.) Specifically, the State *habeas* court concluded that "the trial record demonstrates Ewell did not receive any inducements in exchange for his testimony at Petitioner's trial." (Id.) Respondent explains that "there were no criminal charges pending against Ewell at the time of the Petitioner's arrest, so there were no

---

[9]    To the extent Petitioner relies upon State law, his claim is not cognizable in federal *habeas corpus*.

41

inducements/charges to be 'worked off' by his passing on information concerning the Petitioner to the police." (Id.) Respondent argues that "Petitioner's strong suspicion that Ewell entered into a second agreement and attempt to connect Ewell's August 1999 informant activities with his October 1999 DUI amounts to nothing but conjecture." (Id., p. 25.) Respondent further argues that "the FOIA documents do not rise to the level of being so material to the issue of the Petitioner's guilt as to qualify as exculpatory evidence." (Id.) In support, Respondent contends as follows: (1) The jury was "apprised of Ewell's prior agreement with law enforcement to 'work off' a previous DUI charge filed on June 8, 1999;" and (2) "The jury was also privy to his testimony on cross-examination, which, as the habeas court noted, amounted to the 'same discrediting as would have occurred if another agreement had existed on August 25, 1999." (Id.) Respondent argues that the "lower court correctly concluded that there was no reasonable possibility that the FOIA documents, had they been disclosed, would have resulted in an acquittal of the Petitioner." (Id., p. 26.)

In Response, Petitioner argues that "the State authorities have again and again refused to acknowledge evidence in the existing record which supports the claims raised by Daye for relief." (Document No. 77, p. 2.) Petitioner, therefore, contends that "it would be unreasonable in light of the evidence presented in the State court and contrary to clearly established federal law for this court to give deference to a State court judgment which is in contradiction to the record before it." (Id.) First, Petitioner asserts that Respondent incorrectly argues that the Confidential Informant Agreement was signed on August 29, 1999, and that the agreement was not exculpatory. (Id., p. 8.) Petitioner states that "[o]n March 26, 2002, Officer Stanley L. Sweeney

swore out a letter[10] directed to Mr. Truman advising Mr. Truman that the informant had signed a confidential informant agreement on August 24, 1999, a day before Daye's arrest." (Id.) Petitioner contends that despite the foregoing, Prosecutor Truman placed Officer Sweeney on the witness stand during the May 9, 2012, *habeas* hearing, where "Sweeney knowingly gave false testimony that Ewell had signed his confidential informant agreement either on August 27 or 29, 1999." (Id.) Petitioner acknowledges that on May 10, 2012, he received a copy of Officer Sweeney's letter dated March 26, 2002. (Id., p. 9.) Petitioner argues that "State authorities have continued to ignore Mr. Sweeney's letter despite the fact the same letter was made part of the State *habeas* file." (Id.)

Second, Petitioner argues that Prosecutor Truman incorrectly informed the State *habeas* Court that Ewell's confidential agreement ended on August 4, 1999, when the DUI charge was dismissed. (Id., p. 9.) Petitioner, however, contends that "Ewell's agreement to dismiss his DUI charge was not completed until after Daye's August 25, 1999, arrest." (Id.) Specifically, Petitioner claims that Ewell was arrested for DUI on June 8, 1999, and on "July 15, 1999, Magistrate Mark A. Whitely deferred Ewell's DUI charge and scheduled a status conference to be held in the matter on September 9, 1999." (Id., p. 10.) Petitioner contends that Ewell signed his Confidential Informant Agreement in August 1999, and worked with Officers Stanley Sweeney and Timothy Sweeney in a drug operation on August 25, 1999. (Id.) Petitioner contends that Ewell's DUI charge was not dismissed until September 9, 1999. (Id.) Petitioner, therefore, argues that "the premise by the Respondent that Ewell had no inducements by the time of Daye's August 25, 1999, arrest is completely inaccurate and inconsistent with the existing

---

[10]   There is no indication that Officer Sweeney made the statements in the letter under oath or under the penalty of perjury. (Document No. 46, pp. 32 - 33.)

record. (Id.)

Regarding Petitioner's above *habeas* claim, the Circuit Court found as follows:

To begin, upon reviewing Petitioner's Exhibit 14 from the Omnibus hearing, the Court was initially concerned because the date Ewell signed the "Cooperating Individual Agreement" with RUDE and the "Special Consent Form" could be interpreted as one of the three dates: August 24, 1999, August 27, 1999, or August 29, 1999. If it *was* August 24, then it could be problematic. Upon closer examination, however, the Court's initial concern became unfounded. Under oath at trial James Ewell consistently and repeatedly testified that he did not have an agreement with the police or RUDE on August 25, 1999, but instead had reported Daye to the authorities because "it was fun. It was the right thing to do. I resent anybody that sells that drug." Officer Timothy Sweeney of the Sophia Police Department testified that by August 25 of 1999, "He [Ewell] was no longer under any obligation to work for us" and had acted voluntarily in his dealings with Daye. Likewise, Detective Stanley Sweeney of the Beckley City Police Department, who was also one of the police officers involved in the August 25, 1999, dealings with Cornell Daye, testified both at trial and at the habeas corpus omnibus hearing, that Ewell did not have any agreement with law enforcement on August 25, 1999. Tr. Transcripts Vol. 2, 147:15 - 148:4.

\* \* \*

In light of the testimony of Ewell, Tim Sweeney, and Stan Sweeney, this eliminated the Court's concern with the date on the operating agreement, because the jury would have had to conclude that two police officers perjured themselves in order to find that Ewell was acting on behalf of the police as a CI on August 25, 1999. The jury would also have had to conclude that Ewell was lying, and for all the Court knows, perhaps the jury *did* find Ewell's credibility lacking. But regardless, the jury had every opportunity to judge the credibility of these witnesses, and in light of defense counsel's rigorous cross examination (of Stan Sweeney in particular), there is no reasonable probability that these documents would have altered the outcome of the trial.

\* \* \*

Turning to the present case, first and foremost, the prosecutor in this case did not know about or possess the documents at issue until after Petitioner himself obtained them in 2009. This is not a *Yeager* scenario. Specifically, Ewell's undisputed testimony was that he had "worked off" his criminal charges prior to August 25, 1999, and was not arrested again until October of 1999. Additionally, the police officers testified that Ewell had worked off his prior obligation to act as a CI and that he was not acting as a CI on the night in question. Further, Ewell had no criminal charges pending against him at that time that he could have "worked off" by turning in Daye. There was never any kind of CI agreement in the works, and Ewell, unlike Workman, had no State-inspired interest in testifying against Daye in exchange for his own charges being diminished or dismissed.

Moreover, the FOIA documents are not so material to the issue of Daye's

44

guilt as to qualify as exculpatory. The West Virginia Supreme Court recognized in *State v. Fortner*, 182 W.Va. 345, 354, 387 S.E.2d 812, 821 (1989) that "evidence reflecting on the credibility of a key prosecution witness may be so material to the issue of guilt as to qualify as exculpatory matter which the prosecution is constitutionally required to disclose." *State v. Fortner*, 182 W.Va. 345, 354, 387 S.E.2d 812, 821 (1989). As previously stated, Ewell's prior agreement with law enforcement to "work off" a DUI charge was made clear to the jury and subjected his testimony to the same discrediting as would have occurred if another agreement had existed on August 25, 1999. Further, even if Ewell entered an agreement with law enforcement in August 1999, and even assuming the State knew about it at Daye's trial, the non-disclosure was harmless because the jury knew of Ewell's previous involvement with law enforcement.

(Document No. 71-1, pp. 33 - 35, 41 - 42.) The West Virginia Supreme Court adopted and incorporated the "Circuit Court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal" and affirmed the decision of the Circuit Court. (Document No. 71-3.)

It is well established that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). In United States v. Agurs, 427 U.S. 97, 111, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976), the Supreme Court clarified the prosecutor's duty to require disclosure of favorable evidence to the defense, even if not requested. This duty encompasses impeachment evidence, exculpatory evidence, and evidence "known only to police investigators and not to the prosecutor." Kyles v. Whitley, 514 U.S. 419, 438, 115 S.Ct. 1555, 1567-68, 131 L.Ed.2d 490 (1995). However, a prosecutor does not have a "constitutional duty routinely to deliver his entire file to defense counsel." United States v. Agurs, 427 U.S. at 111, 96 S.Ct. at 2401. If the prosecution suppresses Brady material, the disclosure of which would have in all reasonable probability resulted in a different outcome, then

the mandates of due process are violated. See United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Brady v. Maryland, 373 U.S. at 87, 83 S.Ct. at 1196-97. To state a valid Brady claim therefore, the evidence "must be favorable to the accused, either because it is exculpatory, or because it is impeaching, [the] evidence must have been suppressed by the State, either willfully or inadvertently," and the evidence must have been material to the verdict such that its suppression prejudiced the defense. Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999); Monroe v. Angelone, 323 F.3d 286, 299-300 (4th Cir. 2003). Suppressed evidence is "information which had been known to the prosecution but unknown to the defense." Agurs, 427 U.S. at 103, 96 S.Ct. 2392. Undisclosed exculpatory or impeachment evidence is material if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles, 514 U.S. at 434, 115 S.Ct. at 1566. A "reasonably probability" is shown when the suppression of evidence "undermines confidence in the outcome of the trial." Id. at 435, 115 S.Ct. at 1566. The question of materiality must be considered "collectively, not item by item." Id. at 436, 115 S.Ct. at 1567.

The undersigned finds that Petitioner's above claim is without merit because there is no evidence that the State *habeas* Court's determination was contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of facts. Even assuming Petitioner could establish that the August 1999 Confidential Informant Agreement and October 13, 1999 DUI arrest constituted exculpatory or impeachment evidence, Petitioner cannot establish that the State suppressed the evidence or that the evidence was material. First, the undersigned will consider the State *habeas* Court's determination that "the

prosecutor in this case did not know about or possess the documents at issue until after Petitioner

himself obtained them in 2009." (Document No. 71-1, p. 41.) Petitioner has failed to present any

evidence indicating that the State knew of, or had possession of, the documents in issue.

Additionally, the undersigned has thoroughly reviewed the record and can find no indication that

State suppressed the foregoing evidence. Based upon the foregoing, the undersigned finds that

Petitioner has failed to present any evidence rebutting the State *habeas* Court's factual finding

that the State did not suppress the foregoing evidence.

Even assuming the Confidential Informant Agreement and October 13, 1999 DUI arrest

was suppressed, the undersigned finds that Petitioner's cannot establish that the foregoing

evidence was material. The State *habeas* Court determined that "the FOIA documents were not

so material to the issue of Daye's guilt as to qualify as exculpatory." (Document No. 71-1, p.

40.) A review of the trial transcripts reveals that Mr. Ewell testified that he had acted as a

confidential informant to "work off" his June 8, 1999 arrest for DUI. (Document No. 71-11, pp.

151-52.) Specifically, Mr. Ewell testified as follows:

> Q.     All right, sir. Now, you were arrested by Sergeant White, not to be
> confused with the Trooper, but Sergeant White of the Sophia Police
> Department on June 8, 1999. Do you remember?
>
> A.     Yes.
>
> Q.     And what did he stop you for?
>
> A.     I was ultimately charged with DUI.
>
> Q.     All right, sir. And you made an agreement with the State where you
> wouldn't be prosecuted for that. What was your agreement? Tell the jury.
>
> A.     The agreement was with Officer Sweeney that if I could help him gain an
> arrest, or get into a drug - - drug sales from two individuals from Detroit.

* * *

47

Q.    Now, did you complete that agreement and, in summary, you were responsible for two gentlemen out of Detroit being convicted for drug trafficking, in the federal court system. Is that right?

A.    Yes.

(Id.) Although the State *habeas* Court acknowledged that the date on the Confidential Informant Agreement could be interpreted as one of three dates (August 24, 1999, August 27, 1999, and August 29, 1999), the State *habeas* Court ultimately determined that the record did not support a finding that Mr. Ewell was under an agreement with the police at the time of Petitioner's arrest on August 25, 1999. Citing a letter prepared by Officer Stanley Sweeney dated March 26, 2002, Petitioner argues that the State *habeas* Court clearly erred in finding that Mr. Ewell was not working under a Confidential Informant Agreement on September 25, 1999. As stated above, federal *habeas* relief is available if the State Court's decision to deny relief was "based on an unreasonable determination of the facts." "[A] determination on a factual issue made by the State court shall be presumed correct," and the Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." See 28 U.S.C. § 2254(e)(1).

Based upon a review of the record, the undersigned finds that Petitioner has failed to rebut the presumptions of correctness by clear and convincing evidence. The trial transcripts reveal that Mr. Ewell testified that although has was not officially acting as a confidential informant on August 25, 1999, he voluntarily chose to contact the police regarding Petitioner's alleged criminal activity because "it was fun" and he "resents anybody that sells that drug." (Document No. 71-11, p. 152-55.) Specifically, Mr. Ewell testified as follows:

Q.    Now, had you completed your service under that plea agreement by August 25th of 1999?

A.    Yes.

48

Q.     Let me take you back to that day. Do you remember seeing this gentleman, Cornell Daye, August 25, 1999?

A.     Yes.

Q.     Tell the jury the circumstances under which you first ran into Mr. Daye.

A.     There was a house on - - on Heber Street. It was a female that I knew by the name of Tina. I only knew her first name. And I knew that there was always a lot of drug traffic there. And I went to her house, she let me in, and Cornell was in the house.

Q.     Had you ever met Cornell before that day?

A.     Not that I - - no.

Q.     About what time was that?

A.     About 1 o'clock in the morning.

Q.     Okay. So it's in the early morning hours of the 25th of August, 1999?

A.     Yes, sir.

                                        * * *

Q.     What did you do when you got there and you saw all these people?

A.     When I first came in, I saw that Cornell and his friend Petey had a plate with crack cocaine on it, and they asked me if I wanted to buy some.

Q.     What did you tell them?

A.     I said, "I don't have any money."

Q.     And what did they say?

A.     Said, "Can you get me a girl?"

Q.     Who said that?

A.     Cornell.

Q.     What did you say?

                                          49

A.    I said, "Yes. I got to go to Sophia though."

Q.    What did you do then?

A.    I proceeded to my house in Sophia with Cornell. Once I got there, I told him to wait here - I didn't have a phone at the time - and I went over to the Sophia Police Station. There was no one there. I went down to the pay phone and called the Sophia Police Department, told them the situation.

Q.    Sophia Police or 911?

A.    911. You know, emergency operation central.

Q.    Now, why did you do this?

A.    I felt obligated. I mean, it was fun. It was the right thing to do. I resent anybody that sells that drug.

Q.    Now, you had completed your service?

A.    Yes.

Q.    You bought your way out of the DUI, in fairness to everybody, by convicting these two guys of felony drug cases in federal court. So is it your testimony that you did this just because you like doing it, and you resented people trafficking cocaine?

A.    Yes.

(Id.) During cross examination, Mr. Ewell was thoroughly questioned regarding whether he was acting as a confidential informant at the time of Petitioner's arrest.[11] (Id., pp. 160-74.)

---

[11]   Mr. Ewell explained the events of Petitioner's arrest as follows (Document No. 71-11, pp. 157-58.):
  Q.    Where did the idea of - - I understand you did not want defendant arrested at your house. So there was a traffic stop arranged. Is that what you're saying?
  A.    Yes.
  Q.    Okay. And where did you get the beer?
  A.    It was - - I think it was - - it was beer that had been confiscated from a prior incident or something.
  Q.    So the police gave you the beer?
  A.    Yes.
  Q.    Then once they handed you the beer, and you arranged to have them stop you as a driver, what did you do then?

50

Specifically, Mr. Ewell was questioned as follows:

Q.    How many investigations did you do in the course of this being a confidential informant for the RUDE Task Force, Mr. Ewell?

A.    Five.

Q.    You did five cases total?

A.    Yes.

Q.    Is that counting this case?

A.    Yes.

*  *  *

Q.    And you weren't invited to the residence?

A.    No.

Q.    What was your purpose of going to the residence?

A.    I knew there was drug activity there.

Q.    So you were looking for drug activity, weren't you?

A.    Yes.

Q.    You were specifically looking for drug activity to report these people to law enforcement as part of your deal, weren't you?

---

A.    I went back to my house, told Cornell that I could not get ahold of the girl. Any he got tired - - he was tired of waiting anyways. I said, "Well, okay, I'll take you back."

Q.    Then what did you do?

A.    Went up Eisenhower Drive and proceeded to get pulled over by Officer Sweeney and Officer White.

*  *  *

Q.    What happened then?

A.    They pulled us over, and they - - they, you know, it was under the guise that, you know, he was pulling me over DUI, you know, suspicious driving, and they proceeded to search me, as well as Mr. Daye.

Q.    What did they find on Mr. Daye?

A.    They were having trouble finding it. And I pointed - - I pointed to Officer White - - I indicated that he had it hidden down in his sock.

51

> A.    It was not part of my deal.
>
> Q.    You were doing it for the fun of it?
>
> A.    Yes.
>
> Q.    So you were out finding people to report to the law, setting them up like you did Mr. Daye, as you testified to, purposely. Is that you testimony, Mr. Ewell?
>
> A.    I wouldn't determine it as setting it up. He initiated it by offering to sell me drugs.

(Id., pp. 160, 166-67.) Additionally, Officer Timothy Sweeney and Detective Stanley Sweeney testified that Mr. Ewell was not under any obligation to work for them at the time of Petitioner's arrest on September 25, 1999. (Document No. 71-11, p. 196 and Document No. 71-12, pp. 35 - 36.) Specifically, Detective Stanley Sweeney testified as follows:

> Q.    Ewell wasn't operating in the traditional sense as a CI in Daye's case, was he?
>
> A.    That's correct.
>
> Q.    He was essentially a citizen phoning in information to the police?
>
> A.    Letting them know Mr. Daye had crack cocaine on him.
>
> Q.    And the police never tried to control Ewell in the case of State versus Daye, did they?
>
> A.    No, sir.
>
> Q.    But if you're using a confidential informant in the traditional sense, you keep very tight control on them, don't you?
>
> A.    Video, audio, and police surveillance.

(Document No. 71-12, pp. 35 - 36.) During State *habeas* proceedings, Officer Stanley Sweeney continued to testify that Mr. Ewell was not acting pursuant to a Confidential Informant

52

Agreement at the time of Petitioner's arrest. (Document No. 77-2, pp. 47 - 49.) Although Petitioner provides this Court with a copy of a letter prepared by Officer Stanley Sweeney dated March 26, 2002, wherein he indicates that Mr. Ewell was acting under a Confidential Informant Agreement at the time of Petitioner's arrest, the undersigned finds this evidence to be inadequate to overcome the presumption of correctness afforded to the factual findings of the State *habeas* Court. The undersigned finds that the 2002 letter is not "clear and convincing evidence" rebutting the State *habeas* Court's factual finding that Mr. Ewell was not acting under a Confidential Informant Agreement on August 25, 1999. The record reveals that Mr. Ewell, Officer Timothy Sweeney, and Officer Stanley Sweeney testified that Mr. Ewell was not acting pursuant to a Confidential Informant Agreement at the time of Petitioner's arrest. Additionally, Officer Stanley Sweeney testified consistent to his trial testimony during State *habeas* proceedings. It is unclear why the 2002 letter was prepared by Officer Stanley Sweeney, or how much time he dedicated to the details of the letter. (Document No. 46, pp. 32 - 33.) During his trial testimony presented on August 21, 2001, Officer Stanley Sweeney was thoroughly questioned regarding whether Mr. Ewell was working under a Confidential Informant Agreement at the time of Petitioner's arrest and Officer Stanley Sweeney consistently denied such an agreement. The undersigned finds that Officer Stanley Sweeney's testimony at trial on August 21, 2001, to be more reliable than his letter prepared on March 26, 2002. Although it is clear that Officer Stanley Sweeney testified under oath at trial, there is no indication that statements made in the March 26, 2002 letter were "sworn" statements as asserted by Petitioner. Accordingly, Petitioner has failed to rebut the State *habeas* Court's factual finding that Petitioner was not acting under a Confidential Informant Agreement on August 25, 1999.

53

Even assuming the Confidential Informant Agreement was dated August 24, 1999, the undersigned finds that Petitioner cannot establish that the agreement was material. The undersigned further finds that Petitioner cannot establish that Mr. Ewell's arrest on October 13, 1999, for DUI was material. The record reveals that the jury was clearly aware that Mr. Ewell had a DUI arrest on June 8, 1999, which resulted in his cooperation with law enforcement regarding the arrest of drug dealers from Detroit. Mr. Ewell's DUI arrest on October 13, 1999, clearly occurred after Petitioner's arrest on August 25, 1999. Thus, there is no chance that Mr. Ewell was cooperating with law enforcement on August 25, 1999, in an effort reduce a DUI charge that had not yet occurred. Concerning Mr. Ewell's credibility, the record clearly reveals that Mr. Ewell acknowledged that he initiated contact with Petitioner because he thought it was "fun" to inform on alleged criminals and he "resents anybody that sells [crack cocaine]." The undersigned, therefore, finds no reasonable probability that the alleged suppression of Mr. Ewell's Confidential Informant Agreement and his DUI arrest on October 13, 1999, "undermined confidence in the outcome of the trial." Based on the foregoing, the undersigned finds that the State *habeas* Court's determination on the above claim was not contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of the facts. Therefore, the undersigned respectfully recommends that the District Court grant Respondent's Motion for Summary Judgment regarding the above claim.

**6.    Admission of Rule 404(b) Evidence:**

In his Amended Petition, Petitioner argues his "right to a fair trial was violated when the court allowed the prosecution to present the name and nature of Petitioner's prior offenses over Petitioner's request to stipulate to the prior offense evidence that was a status element of the

offense in accordance with <u>United States v. Old Chief</u>." (Document No. 45, pp. 36 - 40.) Petitioner complains that "any attempts by Daye to stipulate to the evidence at trial due to the status element offense did not matter because the Court admitted the prior offenses under the State's 404(b) theory over Daye's request to stipulate the offenses." (<u>Id.</u>, p. 38.) Petitioner states that "[a]lthough his prior offense evidence may have been relevant to Daye's status as a habitual offender under W. Va. Code § 60A-4-408, the evidence clearly was not relevant or probative on the issues of motive, intent, and absence of mistake as claimed by the State." (<u>Id.</u>, p. 39.) Petitioner argues that "the prior offense evidence did not support the State's claim that Daye had intended to trade drugs for sex." (<u>Id.</u>) Petitioner concludes that the "prior offense evidence did nothing more than unfairly prejudice Daye." (<u>Id.</u>) Petitioner contends that the "probative value was clearly outweighed by the prejudice to Daye in that the prior offense evidence was not helpful at all and did nothing more than allow the State to generalize Daye's earlier convictions into inadmissible bad character evidence designed to convict for improper purposes." (<u>Id.</u>, p. 40.)

In his Motion for Summary Judgment, Respondent argues "[t]he prior acts of the Petitioner were admissible under 404(b) of the W.Va. Rules of Evidence." (Document No. 72, pp. 27 - 28.) Respondent contends that the State *habeas* Court correctly "reasoned that although prior bad acts may not be introduced to prove a status element when the defendant has stipulated to the prior bad acts, Rule 404(b) of the W. Va. Rules of Evidence states that "such as proof of motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake or accident." (<u>Id.</u>, p. 27.) Respondent notes that the trial court conducted a separate hearing to determine "whether evidence of previous acts, i.e. convictions for 'possession with intent to deliver' charges, were admissible under 404(b) to prove motive of intent for the charge of

55

possession with intent to deliver." (Id.) Respondent states that "[i]t is unclear why the Petitioner characterizes his charge as an intent to trade drugs for sex, since such a charge is not expressed in the charging documents." (Id.) Respondent notes that Petitioner's prior convictions were admitted for the purposes of showing motive and intent – not for purposes of proving a status element. (Id.) Respondent, therefore, contends that the State *habeas* Court correctly denied Petitioner's above *habeas* ground. (Id.)

In Response, Petitioner argues that "the State's use of 404(b) prior offense evidence over Daye's attempt to stipulate to the prior offense evidence is overly prejudicial and requires reversal of Daye's conviction." (Document No. 77, pp. 25 - 28.) Petitioner explains that "the State's intent to deliver element presented at Daye's trial was based solely on testimony from James Ewell indicating that Daye had allegedly intended to trade drugs for sex." (Id., p. 25.) Petitioner contends that "[a]bsent the prejudicial prior offense evidence submitted to the jury, there was no other evidence in the case suggesting that Daye had intended to deliver drugs to anyone." (Id., p. 26.) Petitioner argues that the prior offense evidence was improper based on the following: (1) "[T]he prior offense evidence was not relevant nor did it have any probative value on the issue of intent because the prior offenses did not support the prosecution case that Daye had intended to trade drugs for sex;" and (2) "[T]he prior offense evidence should not have come in over Daye's request to stipulate to the prior offenses which were status elements." (Id.) Petitioner further complains that the trial court "performed a generic 403 balancing test never explaining how the prior offense evidence tended to prove motive, planning, absence of mistake, and intent in the present case." (Id.) Finally, Petitioner argues that he "believes that the Old Chief principle made it clear that 404(b) and Rule 403 would not override a defendant's attempt

to stipulate to the evidence of a prior offense that is a status element of the crime." (Id., pp. 27 -

28.)

> Regarding Petitioner's above *habeas* claim, the Circuit Court found as follows:

> [T]he question before the Court is whether the trial court properly allowed the State to introduce into evidence Petitioner's prior convictions in order to show motive or intent for the crime being tried even though (1) the prior convictions were "status elements" and (2) Petitioner offered to stipulate to those convictions. The Court answers this question in the affirmative.
>
> * * *
>
> In this case, the record reflects that the State introduced Daye's prior convictions for purposes of showing motive and intent – elements that are not "status" elements. Such a use of prior bad acts is precisely the use contemplated by Rule 404(b) of the West Virginia Rules of Evidence and in no way conflicts with [*State v. Nichols*, 541 S.E.2d 310 (1999)]. Further, during the trial just prior to the evidence at issue being introduced, the Court expressly instructed the jury that it was consider the prior convictions solely to determine the element of motive or intent. It stated: . . . . Tr. Transcr. Vol. 1, 68:4-11. The trial court gave the exact same limiting instruction to the jury during the final charge. Tr. Transcr. Vol. 2, 307:13-19. Therefore, because the trial judge complied with the *McGinnis* requirements, ruled that the evidence was relevant, and determined the probative value of the evidence outweighed its prejudicial effect, it was properly admitted into evidence under Rule 404(b) even though Petitioner offered to stipulate to the prior convictions. Thus, the Court concludes that Petitioner's argument that the evidence is forever barred from presentation once a stipulation has been offered must fail, as a stipulation to prior conduct for one purpose does not forever preclude its use for other permissible purposes.

(Document No. 71-1, pp. 95 - 99.) The West Virginia Supreme Court adopted and incorporated

the "Circuit Court's well-reasoned findings and conclusions as to the assignments of error raised

in this appeal" and affirmed the decision of the Circuit Court. (Document No. 71-3.)

Rule 404(b) of the West Virginia Rules of Evidence prohibits the introduction of

evidence of other crimes, wrongs, or acts to prove the character of a person in order to show that

he or she acted in conformity therewith. A party, however, may use such evidence for other

purposes, such as to show motive, opportunity, intent, preparation, plan, knowledge, identity,

absence of mistake, or lack of accident. Generally, federal *habeas* relief is available with respect to a trial court's evidentiary rulings, only if the ruling denied the defendant the right to a fair trial. Barbe v. McBride, 521 F.3d 443, 452 (4th Cir. 2008)(Evidentiary rulings by state courts do not constitute a due process violation unless they "were so extreme as to result in a denial of a constitutionally fair proceeding."). When the challenged evidentiary rulings "so infected the entire trial that the resulting conviction violates due process," it is presumed that the defendant was denied a fair trial. Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). The fact that the admitted evidence allegedly was improper under State law, however, does not provide a basis for *habeas* relief. "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." Marshall v. Lonberger, 459 U.S. 422, 438, n. 6, 103 S.Ct. 843, 853, n. 6, 74 L.Ed.2d 646 (1983). The proper inquiry for the Court is whether the admission of the evidence itself so infected the entire trial that the resulting conviction violates due process. See Estelle, 502 U.S. at 72, 112 S.Ct. at 482.

The undersigned finds that Petitioner's above claim is without merit because there is no evidence that the State *habeas* Court's determination was contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of facts. The State *habeas* Court determined that the trial court properly admitted the Rule 404(b) evidence for purposes of showing motive or intent. The record further reveals that the trial court conducted a hearing prior to the admission of the Rule 404(b) evidence. (Document No. 77-2, pp. 26 - 37.) The trial court determined that intent and motive were clearly issues in the case. (Id., p. 36.) Specifically, the record reveals that Petitioner's prior convictions were admitted for the purpose of showing (1) Petitioner's motive as to "why [he] had in his possession

approximately $200 in crack cocaine," and (2) Petitioner's intent as to "what he was going to do with the controlled substances that he had in his possession." (Id., pp. 34 - 36.) The Rule 404(b) evidence revealed that Petitioner had two prior offense of possession of crack cocaine with the intent to deliver. (Id.) Prior to testimony, the trial court gave the following limiting jury instruction:

> The Court instructs the jury that evidence of other crimes, wrongs or acts by the accused is not to be considered to prove his character in order to show that he acted in conformity therewith. However, the jury may consider such evidence for other purposes, such as proof of motive, opportunity, intent, preparation, plan, identity, and absence of mistake or accident as to the crimes charged.

(Document No. 71-11, p. 69.) During the final jury instructions, the trial court again gave the jury the limiting instruction regarding the Rule 404(b) evidence, which the jury is presumed to have followed. (Document No. 71-12, p. 95.) Thus, the undersigned finds that Petitioner was not unduly prejudiced by the admission of Rule 404(b) evidence so as to render Petitioner's trial fundamentally unfair. Even disregarding the Rule 404(b) testimony, there was adequate evidence to support the jury verdict.

Furthermore, the undersigned finds Petitioner's claim based upon Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) to be without merit. In Old Chief, the United States Supreme Court held the district court erred by rejecting the defendant's offer to stipulate to his status as a convicted felon in a case charging defendant with possession of a firearm by a convicted felon. Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). Unlike Old Chief, Petitioner's prior convictions were admitted as Rule 404(b) evidence to show motive and intent – not as a status element of the offense charged. See United State v. Graham, 73 Fed.Appx. 588, * 2 (4th Cir. 2013)(finding *Old Chief* to be

distinguishable because it addressed a status element of the offense charged, and "the Government used Graham's prior convictions for impeachment purposes only"); United States v. Douglas, 482 F.3d 591 (D.C. Cir. 2007)(finding that evidence of defendant's prior arrest for possession with intent to distribute crack cocaine was relevant to establish defendant's knowledge and intent and such relevancy was not overcome by defendant's offer to stipulate). In Old Chief, the Supreme Court stated that if "there were a justification for receiving evidence of the nature of prior acts on some issue other than status (i.e., to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,' Rule 404(b) guarantees the opportunity to seek its admission." Old Chief, 519 at 190, 117 S.Ct. at 655. Accordingly, the undersigned finds that the trial court did not violate the holding of Old Chief by admitting Petitioner's prior convictions as Rule 404(b) evidence to show motive and intent. See United States v. Crowder, 141 F.3d 1202 (D.C. Cir. 1998)("[I]n light of *Old Chief* we hold that a defendant's offer to stipulate to an element of an offense does not render the government's other crimes evidence inadmissible under Rule 404(b) to prove that element, even if the defendant's proposed stipulation is unequivocal, and even if the defendant agrees to a jury instruction of the sort mentioned in our earlier opinion"), cert. denied, 525 U.S. 1149, 119 S.Ct. 1049, 143 L.Ed.2d 55 (1999); also see United States v. Hill, 249 F.3d 707 (8th Cir. 2001)(finding that *Old Chief* did not preclude the admission of defendant's prior drug conviction to show intent); United States v. Williams, 238 F.3d 871, 876 (7th Cir. 2001)(stating that "*Old Chief* counsels that a defendant's offer to stipulate to an element of an offense does not render inadmissible the prosecution's evidence of prior crimes to prove elements such as knowledge and intent"), cert. denied, 532 U.S. 1073, 121 S.Ct. 2232, 150 L.Ed.2d 222 (2001); United States v. Bilderbeck, 163 F.3d 971

(6th Cir. 1999)(finding that evidence of defendant's past drug deals were admissible to demonstrate intent, even though defendant was willing to stipulate that he intended to attempt to possess the cocaine), cert. denied, 528 U.S. 844, 120 S.Ct. 114, 145 L.Ed.2d 97 (1999); United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997)(rejecting defendant's attempt to preclude the admission of prior acts evidence based upon defendant's conditional stipulation to the intent element), cert. denied, 523 U.S. 1101, 118 S.Ct. 1572, 140 L.Ed.2d 805 (1998). Thus, the undersigned concludes that Petitioner has failed to establish a denial of a federal right as to the above claim. Therefore, it is respectfully recommended that Respondent's Motion for Summary Judgment be granted as to the foregoing issue.

**7.     Jury Instruction:**

In his Amended Petition, Petitioner argues that his "due process rights were violated when the trial court instructed the jury that 'the law assumes a person intends the ordinary consequences of his voluntary acts' in violation of Sandstrom v. Montana." (Document No. 45, pp. 40 - 42.) Citing Sandstrom, Petitioner argues that the jury instruction that "allowed the prosecution to supply a material element of the offense through a conclusive presumption violated the Fourteenth Amendment to the United States Constitution." (Id., p. 40.) Specifically, Petitioner asserts that "the State's intent instruction relieved the prosecution of its burden to prove each and every element of the offense beyond a reasonable doubt, and therefore requires reversal of his conviction." (Id., p. 41.) Petitioner argues that the State *habeas* Court erred when it determined that the use of the word "assume" was proper. (Id.) Petitioner argues that the word "assume" is synonymous with "take for granted," "suppose," "presume," "presuppose," "guess," "imagine," and "believe." (Id.) Therefore, Petitioner argues that the "habeas Court was clearly

wrong when the Court ruled against him on this issue." (<u>Id.</u>, p. 42.)

In his Motion for Summary Judgment, Respondent argues "[t]he jury instructions did not violate the Petitioner's Due Process Rights." (Document No. 72, pp. 28 - 30.) Respondent contends that Petitioner's argument based upon <u>Sandstrom</u> is misguided. (Id., p. 29.) Respondent states that the "jury instruction at issue in <u>Sandstrom</u> is not analogous to the jury instruction at issue here." (<u>Id.</u>) Respondent notes the trial court in the underlying case used the word "assume" rather than "presume." (<u>Id.</u>) Respondent contends that the State *habeas* Court correctly determined that "the word 'assume' is synonymous with 'may infer,' and such language has been routinely upheld in jury instructions on the element of intent." (<u>Id.</u>) Respondent further notes that the State *habeas* Court determined the "based on the full instructions given to the jury on 'intent,' no reasonable juror could believe that the burden of proof on the element of 'intent' shifted from the prosecution to the defendant/petitioner." (<u>Id.</u>) Respondent notes that the jury was instructed that "criminal intent is required to be proved by the prosecutor beyond a reasonable doubt.'" (<u>Id.</u>, p. 28.) Respondent further notes that the jury was repeatedly instructed that the State had the burden of proving beyond a reasonable doubt every essential element of the charge." (<u>Id.</u>, p. 30.) Accordingly, Respondent argues that "the instructions on intent as given by the trial court were constitutional and in no fashion shifted the burden of proof to the Petitioner." (<u>Id.</u>)

In Response, Petitioner continues to argue that "the jury instruction which informed the jury that 'in determining the defendant's intention, the law assumes that every person intends the natural consequences of his voluntary and willing acts,' denied Daye due process of law." (Document No. 77, pp. 28 - 29.) Petitioner argues that "Respondent mischaracterizes the word

'assume' and misreads the decision of <u>Sandstrom v. Montana</u>, 442 U.S. 510 (1979)." (<u>Id.</u>, p. 28.)

Petitioner further states that "Respondent's contention that the word 'assume' is synonymous

with 'may infer,' and that it is permissive language is just absurd." (<u>Id.</u>, p. 29.) Therefore,

Petitioner argues that the Court should deny Respondent's Motion for Summary Judgment. (<u>Id.</u>)

Regarding Petitioner's above *habeas* claim, the Circuit Court found as follows:

> According to Petitioner, the aforesaid authorities establish that the trial court committed reversible error in giving the aforementioned instruction because it allowed the jury to presume the material element of "intent."
>
> The Petitioner, however, is mistaken.
>
> While it is unquestionably constitutional error for a court to give an instruction which supplies by presumption any material element of the crime charged *State v. O'Connell*, 163 W.Va. 366, 256 S.E.2d 429 (1979), no such instruction was given in Daye's trial. The instruction, as set forth, *supra*, uses the word "assume." Our Court has routinely upheld jury instructions using permissive language, such as "may infer" in jury instructions on the element of intent. . . . .The word "assume" is permissive language akin to "may infer," and, therefore, appropriate.
>
> Furthermore, as a general rule, when reviewing a challenge to jury instructions, the instructions are to be considered as a whole and not in isolation to determine whether the instructions adequately state the law and provide the jury with an ample understanding of the issues and the controlling principles of law. *State v. LaRock*, 196 W.Va. 294, 307-08, 470 S.E.2d 613, 626-27 (1996), *citing State v. Bradshaw*, 193 W.Va. 519, 457 S.E.2d 456 (1995). Viewing the jury instructions as a whole, this Court finds that the trial court in 00-F-36 accurately and clearly instructed the jury on the element of "intent." It also instructed that "[t]he burden is on the State to prove the guilt of the defendant beyond a reasonable doubt. The defendant is not required to prove his innocence. Our law presumes a defendant to be innocent of a crime ..." Tr. Transcr. Vol. 2, 298:10-13 (emphasis added). And last, the trial court repeatedly instructed the jury that the State had the burden of proving beyond a reasonable doubt every essential element of the charge, including the Petitioner's intent to commit the crime.
>
> Therefore, even though the trial court in one instance used the word "assume" as opposed to "may infer," there is no practical difference between the two, and based on the full instructions given the jury on "intent," no reasonable juror could believe that the burden of proof on the element of "intent" shifted from the prosecution to the defendant/petitioner. Accordingly, the instructions on intent as given by the trial court were constitutional and in no fashion shifted the burden of proof to the Petitioner.

(Document No. 71-1, pp. 100-05.) The West Virginia Supreme Court adopted and incorporated the "Circuit Court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal" and affirmed the decision of the Circuit Court. (Document No. 71-3.)

In Sandstrom v. Montana, the United States Supreme Court held that a jury instruction creating a presumption of malice that had the effect of either eliminating intent as an issue, or of shifting the burden of proof as to defendant's intent, violated due process. Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1999). Subsequently, the United States Supreme Court explained that the threshold inquiry in ascertaining the constitutional analysis applicable to this kind of jury instruction is to determine whether the instruction created a mandatory presumption or merely a permissive inference. Francis v. Franklin, 471 U.S. 307, 313-14, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985)(citations omitted). A mandatory presumption instruction "instructs the jury that it must infer the presumed fact if the State proves certain predicate facts." Id. A permissive inference instruction "suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." Id. "A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." Id. A mandatory presumption instruction violates the Due Process Clause if the instruction relieves the State of the burden of persuasion on an element of an offense. Id. A permissive inference instruction does not necessarily implicate the concerns of Sandstrom because "[a] permissive inference does not relieve the State of its burden of persuasion." Id. "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." Id.(citation omitted).

In the instant case, the challenged instruction states as follows: "In determining the defendant's intention, the law assumes that every person intends the natural consequences of his voluntary and willing acts." Focusing solely upon the challenged language, the undersigned finds that the language could have reasonably been understood as creating a presumption that relieved the State of its burden of persuasion on the element of intent. Specifically, when considering the challenged language in isolation, the language appears to direct the jury to presume a finding of intent. As stated in <u>Francis</u>, however, the inquiry does not end here. <u>Francis</u>, 471 U.S. at 315, 105 S.Ct. at 1971. "If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole." <u>Id.</u> Considering the challenged instruction in the context of the instructions as a whole, the record reveals that the other instructions clarified the alleged infirm language to the extent that a reasonable juror would believe that the juror was not required to presume intent. Concerning the element of intent, the trial court instructed the jury as follows:

> The crimes charged in this case require proof of his criminal intent before the defendant can be convicted. Criminal intent, as the term implies, means more than the general intent to commit the act or acts. To establish criminal intent, the prosecutor must prove that the defendant knowingly and willingly did the acts forbidden by law, purposely intending to violate the law. Such intent may be determined from all of the facts and circumstances surrounding this case. *In determining the defendant's intention, the law assumes that every person intends the natural consequences of his voluntary and willing acts.* Therefore, criminal intent is required to be proved by the prosecutor beyond a reasonable doubt.

(Document No. 71-12, pp. 96 - 97(Emphasis added). When instructing the jury on the lesser included offense of possession, the trial court instructed that "You must be satisfied beyond a reasonable doubt of this additional intent to deliver the cocaine before you may convict him a

crime of delivery of a controlled substance." (Id., p. 97.) Finally, the trial court clarified its intent instruction by stating as follows:

> The Court instructs the jury that there is a permissible inference of fact that a person intends that which he or she does, or which is the immediate and necessary consequence of his or her act. The burden, ladies and gentlemen, is always on the State to prove guilt beyond a reasonable doubt. This burden never shifts to the defendant, for the law never imposes upon a defendant in a criminal case the duty of calling any witnesses or producing any evidence.

(Id., p. 99.) Considering the context of the jury charge as a whole, the trial court clarified that the jury was not directed or commanded to presume intent. The trial court specifically instructed the jury that the inference was permissive. The undersigned, therefore, finds that a reasonable juror would have interpreted the instructions as permitting a choice on the issue of intent rather than requiring a conclusive presumption. See United States v. Love, 767 F.2d 1052 (4th Cir. 1985)(finding that a jury instruction that "it is reasonable to draw the inference and find that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted" merely instructed the jury what a reasonable inference would be, and did not require the jurors to draw any inference), cert. denied, 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 890 (1986); Dupuy v. Cain, 201 F.3d 582, 588 (5th Cir. 2000)(finding that an instruction that "[a]s a general rule it is reasonable to infer that a person ordinarily intends all the natural and probable consequences of acts knowingly done or knowingly omitted by him" was an allowable inference that did not create a prohibited presumption), cert. denied, 531 U.S. 1128, 121 S.Ct. 885, 148 L.Ed.2d 793 (2001); United v. Lord, 711 F.2d 887, 892 (9th Cir. 1983)(finding the jury instruction that "It is ordinarily reasonable to assume that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted" was not defective under Sandstrom). Petitioner, therefore, cannot establish that his conviction rested upon a violation of

United States Constitution or federal law. Based upon the foregoing, the undersigned respectfully recommends that the District Court grant Respondent's Motion for Summary Judgment on the above issue.

**8.      Challenge to Case Nos. 97-F-16 and 99-IF-69:**

In his Amended Petition, Petitioner challenges the validity of his convictions and sentences in Case Nos. 97-F-16 and 99-IF-69. (Document No. 45, pp. 42 - 53.) First, Petitioner argues that the "trial court violated Petitioner's due process rights when the sentences in Case Nos. 97-F-16-H and 99-IF-69-K were not run concurrently as promised and when the court changed the terms of the plea in petitioner's absence." (Id., pp. 42 - 47.) Second, Petitioner contends that his "right to due process was violated when the trial court failed to inform Petitioner of his right to have a Grand Jury return an Indictment before his plea in Case No. 99-IF-69-K." (Id., pp. 47 - 49.) Finally, Petitioner asserts that his "right to due process was violated when the State failed to provide a factual basis for the plea in Case No. 99-IF-69-K." (Id., pp. 49 - 53.)

In his Motion for Summary Judgment, Respondent first argues "Petitioner's due process rights were not violated because the Court opted not to allow his sentences to run concurrently." (Document No. 72, pp. 30 - 32.) Second, Respondent asserted that "Petitioner presents no evidentiary support for his argument that he did not waive his right for prosecution by indictment." (Id., pp. 32 - 33.) Finally, Respondent argued that "Petitioner's claim that the State failed to set forth a factual basis for his plea is without merit." (Id., p. 33 - 34.)

In Response, Petitioner first argues that his "due process rights were clearly violated when the Court changed the terms of the plea in Daye's absence." (Document No. 77, pp. 28 -

33.) Second, Petitioner contends that "it is the Respondent who must demonstrate that Daye did not knowingly and voluntarily waive his right to trial by indictment." (Id., p. 33.) Finally, Petitioner asserts that Case No. 99-IF-69 must be dismissed "because the plea lacked a factual basis." (Id., pp. 33 - 34.)

Although Respondent does not assert the statute of limitations as an affirmative defense, the undersigned will consider the timeliness of Petitioner's federal *habeas* petition as to Case Nos. 97-F-16 and 99-IF-69. The Court is permitted to consider the statute of limitation defense *sua sponte* when the defense is plain from the face of the petition. Day v. McDonough, 547 U.S. 198, 207, 126 S.Ct. 1675, 1682,164 L.Ed.2d 376 (2006)("District courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's *habeas* petition, even after the pre-answer, initial screening stage of the *habeas* proceedings.) In Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655 (4th Cir. 2006), the Fourth Circuit stated as follows:

> Although a court generally possesses no strong institutional interest in the enforcement of a statute of limitations, we have recognized that a statute of limitations defense may be properly raised *sua sponte* by a district court in certain narrow circumstances. Specifically, we have permitted *sau sponte* consideration of the statute of limitations when such a defense plainly appears on the face of either a petition for *habeas corpus* filed pursuant to 28 U.S.C. § 2254, see Hill v. Braxton, 277 F.3d 701, 706 (4th Cir. 2002), or a complaint filed in forma pauperis pursuant to 28 U.S.C. § 1915, see Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 953 - 54 (4th Cir. 1995).

The "statute of limitation defense is not jurisdictional, hence courts are under no obligation to raise the time bar *sua sponte*." Day, 547 U.S. at 205, 126 S.Ct. at 1681.

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 [AEDPA], effective April 24, 1996, provides that Section 2254 *habeas* petitions must be filed within one year after "the date on which the judgment became final by the conclusion of

direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[10] First, the undersigned will consider the timeliness of Petitioner's challenge to his conviction and sentence in Case No. 97-F-16. Concerning Case No. 97-F-16, Petitioner did not file a direct appeal of his conviction in the West Virginia Supreme Court of Appeals, and therefore, his conviction became final by the conclusion of direct review, or the expiration of the time for seeking such review, on November 3, 1997 (four months[11] after Petitioner was convicted and sentenced in the Circuit Court of Raleigh County).[12] Thus, pursuant to Rule 6(a)

---

[10] Title 28, United States Code, Section 2244(d)(1) provides as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

[11] On March 28, 1997, Petitioner pled guilty to petit larceny and possession of crack cocaine with the intent to deliver in Case No. 97-F-16. Petitioner was sentenced on July 3, 1997.

[12] Rule 37(b)(3) of the West Virginia Rules of Criminal Procedure provides:

> (3) Time for Petition for Appeal. - A petition must be filed with the clerk of the circuit court where the judgment, decree or order being appealed was entered within four months of the entry of the circuit court order. The appeal period may be extended, upon request of the appealing party, within four months of the order appealed from for the purpose of preparing a transcript or for good cause, for a period or periods not to exceed a total of two months. When an appeal by the state is authorized by statute, the petition for appeal shall be filed with the clerk of the circuit court within 30 days after entry of judgment or order appealed from.

of the Federal Rules of Civil Procedure,[13] the one-year statute of limitation began to run on

November 4, 1997,and Petitioner had until November 3, 1998, to file a Section 2254 Application

in the United States District Court, unless he first sought post-conviction relief from the State

Courts. Petitioner filed his first State *habeas* Petition on May 25, 2004, more than four years and

five months after the one year period expired. Accordingly, the one-year statute of limitation was

not tolled by Petitioner's State *habeas* proceedings as Petitioner did not have a State *habeas*

petition pending at any time between November 4, 1997, through November 3, 1998. Petitioner

filed his instant Section 2254 Application on March 31, 2008. Therefore, the undersigned finds

that Petitioner's Section 2254 *habeas* Petition was filed outside the limitation period under 28

U.S.C. § 2244(d) as to Case No. 97-F-16.

Second, the undersigned will consider the timeliness of Petitioner's challenge to his

conviction and sentence in Case No. 99-IF-69. Concerning Case No. 99-IF-69, Petitioner did not

file a direct appeal of his conviction in the West Virginia Supreme Court of Appeals, and

therefore, his conviction became final by the conclusion of direct review, or the expiration of the

time for seeking such review, on July 22, 1999 (four months[14] after Petitioner was convicted and

---

[13] Rule 6(a) of the Federal Rules of Civil Procedure provides in part, as follows:

**(a) Computing Time.** The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.
    **(1) Period Stated in Days or a Longer Unit.**
    When the period is stated in days or a longer unit of time:
        **(A)** exclude the day of the event that triggers the period;
            **(B)** count every day, including intermediate Saturdays, Sundays, and legal holidays; and
            **(C)** include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

[14] On March 22, 1999, Petitioner pled guilty to possession of crack cocaine with the intent to deliver in Case No. 99-IF-69. Petitioner waived his right to a pre-sentence investigation and the Circuit Court

sentenced in the Circuit Court of Raleigh County). Thus, pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, the one-year statute of limitation began to run on July 23, 1999, and Petitioner had until July 22, 2000, to file a Section 2254 Application in the United States District Court, unless he first sought post-conviction relief from the State Courts. Petitioner filed his first State *habeas* Petition on May 25, 2004,[15] nearly three years and ten months after the one year period expired. Accordingly, the one-year statute of limitation was not tolled by Petitioner's State *habeas* proceedings as Petitioner did not have a State *habeas* petition pending at any time between July 23, 1999, through July 22, 2000. Petitioner filed his instant Section 2254 Application on March 31, 2008. Therefore, the undersigned finds that Petitioner's Section 2254 *habeas* Petition was filed outside the limitation period under 28 U.S.C. § 2244(d) as to Case No. 99-IF-69.

Nevertheless, the one-year limitation period may be subject to equitable modification in appropriate cases. *See* Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010); Harris, 209 F.3d at 328-31. In Holland, the United States Supreme Court concluded that Section 2244(d) may be tolled "only if [the petitioner] shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649, 130 S.Ct. at 2562; also see Harris, 209 F.3d at

---

sentenced Petitioner on the same day.

[15]  The undersigned notes that there is no time limit for the filing of a State *habeas* Petition and there is no right to counsel in State *habeas* proceedings under West Virginia law. Rather, W. Va. Code § 53-4A-4 states that under certain circumstances, the Circuit Court must appoint counsel in *habeas* proceedings as follows:

> A petition filed under the provisions of this article may allege facts to show that the petitioner is unable to pay the costs of the proceeding or to employ counsel, may request permission to proceed *in forma pauperis* and may request the appointment of counsel. If the court . . . is satisfied that the facts alleged in this regard are true and that the petition was filed in good faith, and has merit or is not frivolous, the court shall order that the

330(petitioner bears the burden of proof regarding equitable tolling). The doctrine of equitable tolling has generally been applied in two distinct situations. First, the doctrine has been applied in situations where the petitioner was prevented from asserting his claims due to the respondent's wrongful conduct. Harris, 209 F.3d at 330. Second, the doctrine has been applied in situations where the petitioner was prevented from asserting his claims due to circumstances beyond his control or "external to the party's own conduct." Id. The Harris Court made it clear that equitable tolling should rarely be allowed stating as follows (Id.):

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

Harris, 209 F.3d at 330. The undersigned finds that Petitioner has not presented "extraordinary circumstances" beyond his control to justify invoking the doctrine of equitable tolling. A misunderstanding of the statutory limitation period, no matter how innocent it may be, does not constitute "extraordinary circumstances" beyond Petitioner's control to justify equitable tolling of the limitation period.

> [T]the mistake in this case is not extenuated by any lack of clarity in the statute. The language of §§ 2244(d) provides unambiguously that the one-year period within which a federal habeas petition must be filed commences on the "conclusion of direct review." This language does not contribute to a misunderstanding that would have the time commence on the "conclusion of State post-conviction proceedings.

Harris, 209 F.3d at 331. Furthermore, the particular "facts and circumstances" of Petitioner's

---

petitioner proceed *in forma pauperis*, and the court shall appoint counsel for the petitioner.

case do not warrant equitable tolling. Petitioner's instant Petition was filed approximately four years after the Section 2244(d) one-year period expired as his convictions in Case Nos. 97-F-16 and 99-IF-69. Petitioner is, therefore, hereby notified in accordance with the Fourth Circuit's decision in Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002), that the undersigned recommends that his Section 2254 action be dismissed as untimely as to Case Nos. 97-F-16 and 99-IF-69 unless Petitioner can demonstrate that the Petition was filed within the proper time period or circumstances exist which would permit equitable tolling of the limitation period.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's Motion for Summary Judgment (Document No. 71), **DISMISS** Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody (Document Nos. 1, 44, and 45), and remove this matter from the Court's docket.

The parties are hereby notified that this "Amended Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Amended Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Berger, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Amended Proposed Findings and Recommendation" and to transmit a copy of the same to Petitioner and counsel of record.

Dated: October 5, 2016.

Omar J. Aboulhosn
United States Magistrate Judge