**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

CORNELL F. DAYE,

                    Petitioner,

v.                                  CIVIL ACTION NO.   5:08-cv-00215

DAVID BALLARD, Warden,

                    Respondent.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Petitioner's March 31, 2008[1] *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by Person in State Custody* (Document 1), as amended by the *Petitioner's Supplemental § 2254 Petition* (Document 44) and supplemental *Memorandum* (Document 45).   By *Standing Order* (Document 3), this matter was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge for submission of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636.   Upon Judge VanDervort's retirement, the matter was referred to the Honorable Omar J. Aboulhosn.

On March 22, 2016, the Magistrate Judge submitted a *Proposed Findings and Recommendation* (Document 89), and on October 5, 2016, the Magistrate Judge submitted an *Amended Proposed Findings and Recommendation* (PF&R) (Document 93), wherein it is recommended that this Court grant the Respondent's motion for summary judgment, dismiss the

---

1  This matter was held in abeyance until May 2014, pending resolution of state habeas proceedings.

1

Petitioner's petition, and remove this matter from the Court's docket. The *Petitioner's Objections to the Magistrate's Proposed Findings and Recommendations* (Document 91) were timely filed.[2] For the reasons stated herein, the Court finds that the objections should be overruled, and the PF&R should be adopted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Magistrate Judge's PF&R fully explored the factual background and procedural history, and the Court hereby adopts those factual findings. The Court will provide a summary of the facts and procedural history herein. The Petitioner, Cornell F. Daye, was indicted in Raleigh County, West Virginia, on January 10, 2000, for one count of possession of crack cocaine with intent to deliver, second offense. On August 21, 2001, following a two-day jury trial, he was convicted. The next day, the State filed an information under West Virginia's habitual offender statute, W.Va. Code § 61-11-19, stating that the Petitioner had been convicted of three prior drug offenses. The State cited the August 21, 2001 conviction for possession with intent to deliver, a March 22, 1999 conviction for possession of a controlled substance with intent to deliver, and an April 28, 1998 conviction for possession of crack cocaine with intent to deliver. The court held a hearing on the Information, advising the Petitioner that he "could be sentenced to a period of life in the penitentiary, with the possibility of parole," if he admitted that he was the person convicted of the listed felonies. (PF&R at 2, citing Raleigh County Circuit Court Habeas Decision, Document 71-1, at 7) (hereinafter, State Habeas). The Petitioner admitted that he was the person convicted in the previous cases. On September 26, 2001, the Circuit Court sentenced the

---

2 The Petitioner filed objections to the original PF&R. After the Magistrate Judge filed the amended PF&R, which made a minor correction to a legal standard, but did not alter the findings or the reasoning as applied to the instant case, the Petitioner filed a brief note stating that he wished to stand on his original objections.

Petitioner to an indeterminate term of not less than two nor more than thirty years in prison, pursuant to W. Va. Code § 60A-4-408, which increases sentences for a second or subsequent controlled substance felony. At the initial sentencing hearing, the Circuit Court declined to impose a life sentence pursuant to the habitual offender statute, W.Va. Code § 61-11-18. The State filed a motion to correct sentence, arguing that W. Va. Code § 61-11-18 required a life sentence. On October 11, 2001, the Circuit Court re-sentenced the Petitioner to life in prison with the possibility of parole, pursuant to § 61-11-18.

The Petitioner appealed to the West Virginia Supreme Court of Appeals, which denied the appeal. He filed a state habeas petition raising several grounds for relief, which was also denied. He appealed the denial of his habeas petition to the West Virginia Supreme Court, which affirmed that the sentence was legal, but remanded for consideration of remaining issues. The Circuit Court appointed counsel and gave the Petitioner the opportunity to amend his habeas petition and file a *Losh* list. The Circuit Court permitted limited discovery and held an omnibus hearing, and ultimately denied the petition in a lengthy order issued on August 16, 2013. The West Virginia Supreme Court affirmed the Circuit Court's decision on April 4, 2014.

The Petitioner filed his federal habeas petition on March 31, 2008, within one year of the state Supreme Court's denial of relief as to the legality of the corrected life sentence, and requested that the petition be held in abeyance until resolution of the remaining state habeas claims. The Court stayed the case until May 6, 2014. The Respondent moved for summary judgment, and the parties completed briefing which included extensive state court records. The Magistrate Judge recommended granting the Respondent's motion for summary judgment, and the Petitioner filed timely objections.

**STANDARD OF REVIEW**

*A. PF&R Objections*

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982). When reviewing portions of the PF&R de novo, the Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir.1978).

*B. Motions Pursuant to 28 U.S.C. § 2254*

28 U.S.C. § 2254 provides for federal review of a state prisoner's petition for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioners must exhaust all available state remedies. *Id.* § 2254(b)(1). Furthermore:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d)(1)–(2).   Factual determinations made by a state court are presumed correct, and petitioners must rebut that presumption by clear and convincing evidence. *Id.* § 2254(e)(1).

Federal review of motions brought by state prisoners pursuant to 28 U.S.C. § 2252 is highly deferential.  *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1398 (2011); *Robinson v. Polk*, 438 F.3d 350, 354-55 (4th Cir. 2006).   The Supreme Court explains that the "contrary to" clause of § 2254(d)(1) means that "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).   The "unreasonable application" clause of that section means that "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*

"Under § 2254(d), a habeas court must determine what arguments or theories supported or…could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see also Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012) (holding that habeas relief is unavailable unless "*each* ground supporting the state court decision is examined and found to be unreasonable under AEDPA."  If a state court applied the appropriate legal standard in a reasonable manner, the federal court may not grant habeas relief even if it would have reached a different conclusion.

*Williams*, 529 U.S. at 406. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original).

**DISCUSSION**

The Petitioner set forth several grounds for habeas relief, all of which the Magistrate Judge addressed. The Court will provide de novo review only as to the findings and conclusions to which the Petitioner addressed his objections: a jury instruction regarding intent; alleged *Brady* violations related to an informant's status; Eighth Amendment and Equal Protection claims; and the validity of the convictions for the predicate offenses underlying the recidivist sentence.

*A. Jury Instructions*

The Petitioner argues that the trial court violated his due process rights by instructing the jury that "[i]n determining the defendant's intention, the law assumes that every person intends the natural consequences of his voluntary and willing acts." (PF&R at 65.) The state habeas court found that "[t]he word 'assume' is permissive language akin to 'may infer,' and, therefore, appropriate." (State Habeas at 103.) The state habeas court further emphasized that the jury instructions as a whole clearly placed the burden of proving intent on the prosecution. The Magistrate Judge found that the "assumes" language "could have reasonably been understood as creating a presumption that relieved the State of its burden of persuasion on the element of intent," but concluded that the full instructions clarified the problematic language. (PF&R at 65.) The Petitioner argues that the correct instructions did not cure the error.

The trial court offered a number of general instructions placing the burden of proving every element beyond a reasonable doubt on the State. The challenged instruction, in context, reads as follows:

> The crimes charged in this case require proof of his criminal intent before the defendant can be convicted. Criminal intent, as the term implies, means more than the general intent to commit the act or acts. To establish criminal intent, the prosecutor must prove that the defendant knowingly and willingly did the acts forbidden by law, purposely intending to violate the law. Such intent may be determined from all of the facts and circumstances surrounding this case. In determining the defendant's intention, the law assumes that every person intends the natural consequences of his voluntary and willing acts. Therefore, criminal intent is required to be proved by the prosecutor beyond a reasonable doubt.

(Trial Tr. at 308:21–309:10) (Document 71-12.) The court went on to provide an instruction on the lesser included offense of simple possession, stating that if the jury found that the State had proven possession, but "that the State has not established beyond a reasonable doubt that he had the intent to deliver [the cocaine], you may find him guilty of the crime of possession of a controlled substance, not the crime of delivery of a controlled substance." (*Id.* at 310::11-20.) In instructing the jury on the defense of entrapment, the court stated: "If the evidence in this case leaves you with a reasonable doubt whether the defendant had any intent to commit the crime except for the inducement or persuasion on the part of some State officer or agent, then it is your duty to find the defendant not guilty." (*Id.* at 310:22–311:2.) Finally, the court read the following instruction:

> The Court instructs the jury that there is a permissible inference of fact that a person intends that which he or she does, or which is the immediate and necessary consequences of his or her act. The burden, ladies and gentlemen, is always on the State to prove guilt beyond a reasonable doubt. This burden never shifts to the defendant, for the law never imposes upon a defendant in a criminal case the duty of calling any witnesses or producing any evidence.

(*Id.* at 311::3-11.)

In *Sandstrom v. Montana*, the United States Supreme Court held that an instruction that "the law presumes that a person intends the ordinary consequences of his voluntary acts" could have been interpreted to limit or shift the prosecution's burden of proof. 442 U.S. 510, 512 (1979). The Court found that the instruction violated the defendant's right to due process because "a reasonable juror could have given the presumption conclusive or persuasion shifting effect." *Id.* at 519. In short, juries may be given instructions that describe a permissible inference, but not a mandatory or rebuttable inference that a jury could interpret to "relieve the State of the burden of persuasion on an element of the offense." *Francis v. Franklin*, 471 U.S. 307, 314 (1985).[3]

Where multiple instructions address intent, "the potentially offending words must be considered in the context of the charge as a whole." *Id.* at 315. However, "general instructions on the State's burden of persuasion and the defendant's presumption of innocence" are not sufficient to cure a mandatory inference or burden-shifting instruction. *Id.* at 319. The same is true of a contradictory instruction where "[a] reasonable juror could easily have resolved the contradiction in the instruction by choosing to abide by the mandatory presumption and ignore the prohibition of presumption." *Id.* at 322. "Language that merely contradicts and does not explain

---

3 The instruction at issue in *Franklin* was as follows:

A crime is a violation of a statute of this State in which there shall be a union of joint operation of act or omission to act, and intention or criminal negligence. A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking or intention or criminal negligence. The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted. A person will not be presumed to act with criminal intention but the trier of facts, that is, the Jury, may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted.

*Francis v. Franklin*, 471 U.S. 307, 311–12 (1985).

a constitutionally infirm instruction will not suffice to absolve the infirmity." *Id.* Courts must evaluate "whether there is a reasonable likelihood" that the jury "understood the instruction to relieve the state of its burden of persuasion on every necessary element. *Boyde v. California*, 494 U.S. 370, 380, (1990); *Johnson v. Evatt*, 993 F.2d 1537 (4th Cir. 1993) (unpublished).

The Court agrees with the Magistrate Judge that the challenged instruction stating that "the law assumes that every person intends the natural consequences of his voluntary and willing acts" could be interpreted as a mandatory presumption, similar to that addressed in *Sandstrom*. The Supreme Court has emphasized that the focus must be on how a reasonable lay juror would interpret the language, not a state's determination of the meaning, and so the Court will not defer to the state habeas court's contrary conclusion. *Francis v. Franklin*, 471 U.S. 307, 315–16 (1985). However, in this case, the instruction was of little consequence. The Petitioner was convicted of possession of crack cocaine with intent to distribute, based on evidence that he had (a) offered to sell crack cocaine to an informant and (b) offered to trade the crack cocaine for sex when the informant said he had no money. The jury found intent to distribute based on evidence of the direct actions of the Petitioner, not based on an assumption that he intended the natural consequences of his actions. There were no "natural consequences" of the acts at issue in this case and so his intent regarding the consequences of his voluntary and willing acts was likewise not at issue. Thus, the Court finds that there is no reasonable likelihood that the jury interpreted the instruction to relieve the State of its burden as to any element of the offense, simply because there was no element of the offense to which the challenged instruction actually applied. Therefore, the Court adopts the Magistrate Judge's recommendation that the Respondent's motion for summary judgment be granted as to the challenged jury instruction.

## B.  Brady Violations

The Petitioner asserts that the State failed to disclose information regarding a key witness against him, James Ewell.   Mr. Ewell testified during the Petitioner's trial that he went to a house where he suspected drug activity and met the Petitioner for the first time that night, August 25, 1999.   He testified that he observed the Petitioner and a friend with a plate containing crack cocaine, and they offered to sell him some.   Mr. Ewell said that he did not have money, and the Petitioner asked if Mr. Ewell could "get [him] a girl."   (State Habeas at 24.)   Mr. Ewell agreed, but told the Petitioner they would need to go to his home in Sophia, West Virginia.   After arriving there, Mr. Ewell used a pay phone to call the police, who arranged a traffic stop during which they conducted a search and discovered about a gram of crack cocaine in the Petitioner's possession.   Mr. Ewell testified as to a prior agreement to work as a cooperating source in exchange for non-prosecution of a June 1999 DUI charge, but stated that he had completed the agreement prior to his contact with the Petitioner.   Mr. Ewell and police officers testified that Mr. Ewell was not a confidential informant or an agent of the police at the time of the Petitioner's arrest.

The Petitioner obtained documents related to Mr. Ewell via a Freedom of Information Act (FOIA) request.   That information included a Cooperating Individual Agreement and a Special Consent Form signed by Mr. Ewell in late August, 1999.[4]   (Document 46 at 13-14.)   In addition, Mr. Ewell failed to mention when asked, and officers failed to disclose, that Mr. Ewell had been

---

4 The handwritten date is unclear; the state habeas court found that it could be August 24, 27, or 29.   A letter from Det. Sgt. Stan Sweeney, dated March 26, 2002, indicates that Mr. Ewell signed a CI packet on August 24, 1999 in order to continue assisting officers after his DUI had been reduced based on prior assistance.   (Document 46 at 16.) A letter from the prosecuting attorney dated October 16, 2009, produced in the course of the state habeas case, states that the CI agreement is dated August 29, 1999, and that Mr. Ewell was not a CI at the time of the Petitioner's arrest or at the time of his trial.   The state habeas court credited testimony from officers stating that Mr. Ewell was not operating as a CI on August 25, 1999.   The Court notes that neither Mr. Ewell nor the officer(s) disclosed that he signed a cooperation agreement within days of the Petitioner's arrest.

arrested for traffic violations and a second-offense DUI on October 13, 1999. A letter from the prosecuting attorney to the Petitioner's trial counsel explained that Mr. Ewell's cooperation with the police was the result of a verbal agreement following a stop for a likely DUI in the summer of 1998, and his obligation pursuant to that agreement was complete by August of 1999. (Document 46 at 16.) The state habeas court found that the FOIA material constituted new information, but was unlikely to have affected the outcome of the trial. The court concluded that the new evidence would have provided limited additional impeachment as to Mr. Ewell, and that "even though presentation of the FOIA documents would have supported the Petitioner's defense of entrapment, the jury did in fact deliberate on the defense of entrapment and found it lacking." (State Habeas at 35.) Even if the FOIA documents led the jury to conclude that Mr. Ewell, acting as a state agent, induced the Petitioner to commit the crime, the state habeas court found that "it is highly probable that the jury would still conclude that defendant Daye was predisposed to committing the offense." (*Id.* at 36.)

The state habeas court also found that the prosecutor was not aware of the documents at the time of the trial, and that Mr. Ewell "had no criminal charges pending against him" at the time of the Petitioner's August 25, 1999 arrest.[5] The court found that an additional CI agreement would have had no additional impact because Mr. Ewell's prior agreement with law enforcement was disclosed and explored during the trial. The Magistrate Judge found that there is no evidence that the State knew of or suppressed the evidence at issue. He further concluded that the evidence

---

5 Mr. Ewell's criminal records reflect that his June 8, 1999 DUI arrest was dismissed on September 9, 1999 (Document 46 at 21.) His October 13, 1999 DUI arrest was resolved via a plea to a charge of reckless driving in a plea agreement dated May 10, 2000. (Document 46 at 18.) An assistant prosecuting attorney signed the criminal complaint with respect to the October arrest, as well as the May 10, 2000 plea agreement, but not the Magistrate court dismissal of the June 8 DUI charge.

was not material and was unlikely to change the outcome of the trial. Therefore, he recommends finding that the state habeas court's determinations on this claim were not based on an unreasonable determination of the facts or an unreasonable application of clearly established federal law.

The Petitioner argues that the Magistrate erred by accepting the officer's testimony that Mr. Ewell had no CI obligations on August 25, 1999, despite the officer's letter stating that Mr. Ewell signed a CI agreement on August 24, 1999, and the agreement itself. He emphasizes that the newly discovered evidence would have served to impeach both Mr. Ewell and the officers. The Petitioner also states that Mr. Ewell's testimony that the Petitioner attempted "to trade drugs for sex" was the sole evidence supporting the "intent to distribute," rather than simple possession. (Obj. at 11.) He stresses that the new evidence would have been central to his entrapment defense. Although Mr. Ewell's October 1999 arrest would not be relevant as to his status as a CI on August 25, 1999, it would be evidence of Mr. Ewell's bias or motivation to provide favorable trial testimony. Finally, the Petitioner argues that the prosecutor's knowledge of the documents is irrelevant under *Brady*, given that the police were aware of Mr. Ewell's status as an informant and his full criminal record.

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence that could be used to impeach witnesses for the prosecution is included in the *Brady* rule and must be disclosed. *United States v. Bagley*, 473 U.S. 667, 676 (1985). Prosecutors are required to disclose *Brady* material whether the defense requests it or not, and

prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf…including the police." *Strickler v. Greene*, 527 U.S. 263, 280–81 (1999) (quoting *Kyles v. Whitley,* 514 U.S. 419, 437 (1995)). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler*, 527 U.S. at 281-82. "[T]he conviction must be reversed only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *Bagley*, 473 U.S. at 678.

The FOIA evidence regarding Mr. Ewell's criminal record and cooperation with the police was relevant exculpatory evidence within the possession of the prosecution and/or the police involved in the Petitioner's trial. That evidence included: (a) the cooperation agreement signed in late August, either the day before the Petitioner's arrest or less than a week after the Petitioner's arrest; (b) an additional DUI arrest less than two months after the Petitioner's arrest, and the favorable plea agreement; and (c) criminal records revealing that Mr. Ewell's June DUI was not resolved at the time of the Petitioner's arrest. To the extent the state habeas court and the Magistrate Judge found no evidence of suppression or wrongdoing on the part of the State, this Court must disagree. It is an unreasonable determination of the facts to suppose that the State had no awareness of, or access to records of, prosecutions handled *by the same office* that prosecuted the Petitioner. Further, even if one supposes the cooperation agreement was signed on August 29, 1999, the failure to disclose that agreement is, at best, suspicious.

Although the Court does not condone the actions of the prosecutor and the officers in failing to disclose the FOIA evidence, the Court cannot conclude that the state habeas court's

conclusion that the evidence would not have affected the outcome of the trial to be an unreasonable application of clearly established federal law.   The evidence was relevant to impeach Mr. Ewell (as well as the officers who provided testimony somewhat contrary to the evidence) and to support the Petitioner's entrapment defense.   The prosecution made a point of emphasizing that Mr. Ewell was acting as a concerned citizen and had no cooperation agreement with the police at the time of the Petitioner's arrest.   The defense conducted extensive cross-examination regarding Mr. Ewell's prior cooperation agreement.   Evidence that his DUI remained pending at the time of the arrest would have carried some weight in suggesting that Mr. Ewell acted with the expectation of reward from the State.   However, his testimony that the Petitioner offered to trade drugs[6] for sex if Mr. Ewell could find an interested participant was corroborated by the Petitioner's possession of drugs and presence with Mr. Ewell.   The Court cannot conclude that the state habeas court misapplied federal law in finding that the impeachment evidence does not undermine confidence in the outcome of the trial.

The undisclosed evidence would also have supported the Petitioner's entrapment defense by providing additional evidence that Mr. Ewell was acting as an agent of the police.   However, the state habeas court concluded that trial evidence that the Petitioner had a predisposition to commit the offense was strong, and remained undisturbed by the new evidence.   The Petitioner had prior convictions for possession with intent to distribute, which were admitted to show intent, and readily accompanied Mr. Ewell, apparently in search of a woman willing to trade sex for drugs. The Court's role in a § 2254 case is limited to considering whether the "state court applied the appropriate legal standard in a reasonable manner," not to reach its own independent conclusion.

---

6 The Court notes that the Petitioner was found with slightly over one gram of cocaine base, an amount consistent with personal use quantities absent other evidence of intent to distribute.

*Williams v. Taylor*, 529 U.S. 362, 406 (2000). Therefore, the Court finds that the Respondent is entitled to summary judgment as to this issue.

### C. Eighth Amendment and Equal Protection

The Petitioner further contends that the habitual offender sentence of life imprisonment with the possibility of parole is disproportionate to his offense and that the State of West Virginia applies the habitual offender statute in a racially discriminatory manner. The state habeas court relied upon the West Virginia Supreme Court's earlier ruling that application of the life sentence was mandatory under W.Va. Code § 61-11-18. The Magistrate Judge summarized the legal standards and case law related to proportionality challenges under the Eighth Amendment and found his challenge to be without merit.

The Petitioner argues that the West Virginia Supreme Court has routinely reversed habitual offender life sentences for non-violent white drug offenders, but upheld such sentences for non-violent black offenders. He cites news articles and public consensus supporting reform of sentencing laws in support of his position that his sentence, and similar "racially divisive sentencing structures," should be reconsidered under the standards of decency test. The Petitioner recognizes, however, that the United States Supreme Court has not made a similar finding, and that this Court would have to "stray from the norm" to find "West Virginia's sentencing scheme unconstitutional." (Obj. at 25.)

The Petitioner was sentenced under W.Va. Code § 61-11-18(c), which provides that "When it is determined...that [a defendant] shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life." The United States Supreme Court rejected a

proportionality challenge to California's three-strikes law, as applied to a defendant who had stolen three golf clubs worth $1200. *Ewing v. California*, 538 U.S. 11 (2003). The defendant in *Ewing* had a long string of convictions for theft of varying degrees, battery, unlawfully possessing a firearm, as well as three burglaries and a robbery, some of which included threats and violence. *Id.* at 18–19. Within a year of his release from a nine-year sentence for the robbery and burglaries, he stole the golf clubs, and the trial court imposed a three-strikes sentence of 25 years to life. *Id.* at 20. In *Ewing* and other cases addressing proportionality, the Supreme Court has considered eligibility for parole an important factor limiting the harshness of a life sentence imposed when a relatively minor crime triggers a recidivist sentence.[7] *See id.* at 22 (discussing precedent).

The Petitioner was convicted, pursuant to guilty pleas, of possession with intent to deliver in 1997 and in 1999. He was first sentenced to between six months and two years in the Anthony Center for youthful offenders, and then to one to fifteen years, suspended in favor of four months of confinement and two years of probation. He was on probation at the time of the offense at issue. Although the Court does not have the details of the prior offenses, the prior sentences suggest that there was not evidence that the Petitioner was a major drug trafficker, and the instant case involved just over a gram of cocaine base. Offenses involving the distribution of controlled substances, or possession with intent to distribute, are generally considered serious.

The West Virginia habitual offender statute is applied at the discretion of individual prosecutors, and leaves judges with no sentencing discretion. That system inherently leads to sentencing disparity and "selective enforcement," but does not per se violate the equal protection clause. *State v. Jones*, 420 S.E.2d 736, 741 (W. Va. 1992). It is clear from the record that the

---

7 Indeed, the Petitioner was released on parole during the pendency of his habeas case.

trial judge would not have imposed the habitual offender life sentence if he had sentencing discretion, and it is this Court's experience that people with criminal records and offense conduct similar to the Petitioner's are rarely charged as habitual offenders in West Virginia. However, upon review of the West Virginia Supreme Court's decisions involving W.Va. § 61-11-18, the Court does not find that the decision in the instant case appears inconsistent with decisions or treatment in other similar cases. *See, e.g.*, *State ex rel. Appleby v. Recht*, 583 S.E.2d 800, 804 (W. Va. 2002) (finding W. Va. Code § 61-11-18 potentially applicable to a triggering offense of third-offense DUI, with predicate felonies of two prior instances of third-offense DUI and one conviction for unlawful assault). Thus, there does not appear to be a viable equal protection claim.

Likewise, although the Petitioner's sentence is severe in relation to his crime, it does not meet the standards set forth by the United States Supreme Court for finding a sentence grossly disproportionate in violation of the Eighth Amendment. The Petitioner appears to recognize that relief on this ground would be a shift from existing precedent. Federal review of state habeas decisions is highly deferential, and must be based on a finding that the state court's decision was contrary to existing precedent or was an unreasonable application of federal law. Because the state habeas court and the Magistrate Judge appropriately applied existing precedent, the Court finds that the recommendation that the Respondent's motion for summary judgment should be granted is appropriate.

### D. Predicate Convictions

The Petitioner asserts that his predicate offenses in cases 97-F-16-H and 99-IF-69-K, both for possession with intent to distribute, should be invalidated. The state habeas court considered three issues: the factual basis of the plea in 99-IF-69-K; an assertion that 99-IF-69-K was a

misdemeanor; and that probation in 97-F-16-H and 99-IF-69-K should have been concurrent. The court concluded that the plea had an adequate factual basis given the Petitioner's explanation of the evidence against him,[8] although he proclaimed his innocence and proceeded with a *Kennedy* plea. "[T]he orders following the plea and sentencing hearing…state that the Court accepted a guilty plea to the charge of possession of a controlled substance, to-wit: 'crack' cocaine," which is a misdemeanor. (State Habeas at 86.) Based on the content of the plea agreement, the transcript of the plea hearing, and the sentence imposed, the state habeas court concluded that the reference to possession of a controlled substance, rather than possession with intent to distribute, was a clerical mistake, and ordered the State to prepare an amended order for entry by the judge who handled that case. Finally, the state habeas court found that the trial court did not intend the terms of probation to run concurrently, although they were effectively concurrent, and concluded that "both convictions were properly enumerated in the recidivist action." (State Habeas at 94.) The Magistrate Judge found that any habeas challenge to the predicate convictions was untimely and declined to address the Petitioner's arguments with respect to those convictions. The Petitioner objects to the untimeliness finding, citing the corrected judgment orders entered in 2013.

The Court finds that a federal habeas challenge as to the predicate convictions is untimely. The amendment of the final orders in Case 99-IF-69-K did not alter the facts surrounding that case to re-open the door to a collateral challenge, and so those convictions were final more than one year before the instant habeas filings.[9] Prior convictions that would not otherwise be subject to

---

8 The Petitioner stated that he was in a hotel room with someone, but that person was not present when police searched the room and found crack cocaine. He claimed that the drugs were not his, but that he had been involved in drugs before and did not believe he "could beat this charge." (State Habeas at 80) (quoting from a transcript of the plea hearing). The prosecuting attorney indicated that the office had lost the case file and was unable to proffer evidence in support of the plea.

9 It is clear from the transcript of the plea and sentencing hearing in 99-IF-69-K, as quoted in the state habeas opinion, that the Petitioner understood that the charge was possession of crack cocaine with intent to distribute. The corrected

collateral attack generally cannot be collaterally attacked based on their use to enhance a subsequent sentence. *Lackawanna Cty. Dist. Attorney v. Coss*, 532 U.S. 394, 403–404 (2001) (holding that "once a state conviction is no longer open to direct or collateral attack in its own right…the conviction may be regarded as conclusively valid" and the prior conviction generally cannot be the basis of a challenge of a subsequent enhanced sentence); *Custis v. United States*, 511 U.S. 485, 487 (1994) (barring collateral attack of predicate convictions in the context of the Armed Career Criminal Act).[10]

The Magistrate Judge raised the issue of timeliness *sua sponte*. The state habeas court considered the challenges to the predicate convictions, and the Respondent briefed those issues on the merits. Accordingly, in the interests of providing full review, the Court will address the challenges to the predicate convictions on the merits.

The Court finds no incorrect application of law or fact in the state habeas court's decision regarding the clerical error in the judgment and sentencing order in 99-IF-69-K. The Petitioner was well aware that he had pled guilty to the felony offense of possession of a controlled substance with intent to distribute, and the sentence correlating to that offense was included on the original

---

order did not alter other aspects of the conviction. Therefore, the correction of the clerical error in the final orders in 99-IF-69-K does not either create a ground for relief or re-open the statute of limitations for collateral attack.

10 The Petitioner did not attempt to challenge the validity of his predicate convictions at the hearing related to the recidivist information. *See State v. Cain*, 359 S.E.2d 581, 583, fn 4 (W.Va.1987) ("Although by far the most common procedure by which to challenge an underlying conviction used for recidivist purposes is a petition for habeas corpus, a defendant is not precluded from challenging the validity of his prior conviction or convictions during his recidivist trial and on subsequent appeal to this Court."). At the recidivist hearing, there was discussion of the possibility that one or more of the Petitioner's prior convictions could be overturned due to a separately pending appeal. To the extent that West Virginia law permits defendants charged under the recidivist statute to challenge their prior convictions prior to imposition of a recidivist sentence, it is possible that federal review of such a challenge would be appropriate. The Petitioner does not appear to have been advised either of his right to challenge the validity of the prior convictions, or of the mandatory life sentence he faced upon conviction under the recidivist statute. Thus, although the Court finds that the statute of limitations had expired with respect to the predicate convictions, there are substantive legal issues that lack clear precedent and have not been fully explored. This is of significance in light of the Court's review of the predicate convictions, particularly the factual basis of the plea in 99-IF-69-K.

order.   The Court also finds no incorrect application of law or fact with respect to the issue related to the terms of probation in 97-F-16-H and 99-IF-69-K.   Even if there was a lack of clarity regarding the concurrence of the terms of probation, there was no question that the two offenses resulted in two separate convictions and two separate sentences.   Therefore, they properly counted as two predicate felonies for purposes of W.Va. Code § 61-11-18.

The sufficiency of the factual basis for the plea in 99-IF-69-K is a closer question.   The Fourth Circuit found an insufficient factual basis for a guilty plea in *United States v. Mastrapa*, 509 F.3d 652, 658 (4th Cir. 2007).   There, a defendant in a drug conspiracy admitted to helping carry grocery bags that contained large quantities of methamphetamine.   He denied knowledge of the drugs or any additional details of the conspiracy, including any relationship with the co-conspirators.   Law enforcement proffered an affidavit recounting surveillance showing that the defendant met a co-conspirator, drove the co-conspirators and the bags of groceries to a hotel, and helped carry the bags into the hotel room.   The Fourth Circuit found that there was no evidence in the record that the defendant "had knowledge of the conspiracy and that he knowingly and voluntarily participated in the conspiracy." *Mastrapa*, 509 F.3d. at 660 (emphasizing that the defendant did not appear to understand that there would be no legal liability if he did not know about the drugs or the conspiracy).   In *Alford*, the federal case holding that a defendant may plead guilty without admitting guilt, the Supreme Court found that the plea was acceptable "[i]n view of the strong factual basis…and Alford's clearly expressed desire to enter it," establishing that a factual basis is necessary even in a *Kennedy* or *Alford* plea.   *North Carolina v. Alford*, 400 U.S. 25, 37–38 (U.S. 1970).

In the instant matter, the Petitioner entered a *Kennedy* plea, and essentially admitted to being in a room where drugs were found, but denied ownership of the drugs. The prosecutor did not have a case file and made no factual proffer. Thus, there were no facts regarding possession or ownership beyond the Petitioner's proximity to the drugs, much less any facts regarding intent to distribute. The standard for the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* at 31. A plea without an adequate factual basis is not a knowing and intelligent waiver of the right to trial, particularly, as here, where the prosecution had no ability to give any summation of the evidence against the Petitioner. Without an account of the potential evidence to consider in light of the statutory elements and any potential defense, a defendant cannot make an informed plea—particularly a *Kennedy/Alford* plea that is made based on the risk of conviction, without an admission of guilt. Therefore, if consideration of the status of the prior convictions were not time-barred, the Petitioner would be entitled to relief with regard to the lack of a factual basis for the plea in 99-IF-69-K.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court hereby **ORDERS** that the *Petitioner's Objections to the Magistrate's Proposed Findings and Recommendations* (Document 91) be **OVERRULED** and that the Magistrate Judge's *Amended Proposed Findings and Recommendation* (PF&R) (Document 93) be **ADOPTED**. The Court further **ORDERS** that the Respondent's *Motion for Summary Judgment* (Document 71) be **GRANTED**, that the *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by Person in State Custody* (Document 1), as amended by the *Petitioner's Supplemental § 2254 Petition* (Document 44) and supplemental

*Memorandum* (Document 45) be **DISMISSED**, and that this matter be **REMOVED** from the Court's docket.

The Court has additionally considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). The Court concludes that the governing standard is satisfied in this instance. Specifically, the Court finds that reasonable jurists could find the conclusions with respect to the *Brady* issues debatable, as well as the conclusions regarding the statute of limitations for predicate convictions used in a recidivist proceeding, where the state permits a challenge to the validity of those prior convictions on the recidivist charge. Accordingly, the Court **GRANTS** a certificate of appealability.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to Magistrate Judge Aboulhosn, counsel of record, and any unrepresented party.

ENTER:    September 18, 2017

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA